[No. S115823. Aug. 11, 2005.]

STEVEN REYNOLDS, Plaintiff and Appellant, v.
CHRISTIAN BEMENT et al., Defendants and Respondents.

COUNSEL

The Impact Fund, Brad Seligman; The Legal Solutions Group, Robert S. Boulter; Law Office of Jonathan Weiss and Jonathan Weiss for Plaintiff and Appellant.

Van Bourg, Weinberg, Roger & Rosenfeld, Weinberg, Roger & Rosenfeld, Ellyn Moscowitz, Joanna Mittman and M. Suzanne Murphy for The Building and Construction Trades Council of Alameda County, The Building and Construction Trades Council of Contra Costa County, The Building and Construction Trades Council of Los Angeles and Orange Counties, The Building and Construction Trades Council of San Bernardino and Riverside Counties, The District Council of Iron Workers for the State of California and Vicinity, The Northern California Carpenters Regional Council, The International Brotherhood of Electrical Workers Local 11, The Painters District Council Local 36, The Roofers Union Locals 81, 36 and 220 and The Sprinkler Fitters United Association, Local 483 as Amici Curiae on behalf of Plaintiff and Appellant.

Saperstein, Goldstein, Demchak & Baller, David Borgen, Darci Burrell and Joshua Konecky for The Impact Fund, Asian Law Caucus, Inc., Asian Pacific American Legal Center, California Employment Lawyers Association, The Legal Aid Society-Employment Law Center, La Raza Centro Legal, Inc., and Women's Employment Rights Clinic at Golden Gate University School of Law as Amici Curiae on behalf of Plaintiff and Appellant.

Bet Tzedek Legal Services, Gus T. May and Cassandara Stubbs for Asian Law Caucus, Inc., Asian Pacific American Legal Center of Southern California, Bet Tzedek Legal Services, Garment Worker Center, Korean Immigrant Workers Advocates and Sweatshop Watch as Amici Curiae on behalf of Plaintiff and Appellant.

Law Offices of Jeffery K. Winikow, Jeffrey K. Winikow; Law Offices of Peter Rufkin and Peter Rufkin for California Employment Lawyers Association as Amicus Curiae on behalf of Plaintiff and Appellant.

Altshuler, Berzon, Nussbaum, Rubin & Demain, Stephen P. Berzon, Jonathan Wissglass and Barbara J. Chisholm for Service Employees International Union, AFL-CIO, International Brotherhood of Teamsters, AFL-CIO, United Food and Commercial Workers International Union, AFL-CIO, Unite, AFL-CIO, State Building and Construction Trades Council of California, AFL-CIO and United Farm Workers of America, AFL-CIO as Amici Curiae on behalf of Plaintiff and Appellant.

William G. Hoerger; Talamantes/Villegas/Carrera and Mark Talamantes for Miguel Martinez, Antonio Perez Cortes, Asuncion Cruz, Hermilio Mendoza, Jesus H. Mendoza and Catarino Cortez as Amici Curiae on behalf of Plaintiff and Appellant.

Munger, Tolles & Olson, Alan V. Friedman, Kathleen M. McDowell, Linda S. Goldman, Paul J. Watford, Lynn H. Scaduto and Katherine M. Forster for Defendants and Respondents.

Paul, Hastings, Janofsky & Walker and Paul Grossman for California Employment Law Council as Amicus Curiae on behalf of Defendants and Respondents.

Orrick, Herrington & Sutcliffe, Timothy J. Long, Julie A. Totten and Galen T. Shimoda for Employers Group as Amicus Curiae on behalf of Defendants and Respondents.

Palmer Kazanjian Holden and Marcos A. Kropf for the California Independent Grocers Association and the Personal Insurance Federation of California as Amici Curiae on behalf of Defendants and Respondents.

Jonathan L. Block and Joseph J. Craciun for Association of Corporate Counsel America-Southern California Chapter as Amicus Curiae on behalf of Defendants and Respondents.

Knox, Lemmon & Anapolsky and Thomas S. Knox for the California Retailers Association as Amicus Curiae on behalf of Defendants and Respondents.

William E. Dombrowski as Amicus Curiae on behalf of Defendants and Respondents.

Anne Stevason for the Division of Labor Standards Enforcement as Amicus Curiae.

**OPINION**

**WERDEGAR, J.**—In this action for recovery of unpaid overtime compensation, the question presented is whether plaintiff has stated a cause of action against any of eight individuals who were officers or directors and shareholders of the Delaware corporation, or its California subsidiary, that owns the automobile painting business for which he formerly worked. The Court of

Appeal upheld the trial court's sustaining of a demurrer. We affirm the judgment of the Court of Appeal.

## Background

Plaintiff Steven Reynolds, on behalf of himself and those similarly situated,[1] alleges he was employed by defendants Earl Scheib, Inc., and Earl Scheib of California, Inc. (hereafter jointly Scheib, or the corporate defendants), and by defendants Bement, Buchalter, Colburn, Helm, Kyman, Seigel, Sunkin, and Smith (hereafter collectively the individual defendants), as a "shop manager" and an "assistant shop manager" at several locations of defendants' automobile painting business. Defendants own and operate approximately 50 automobile painting shops in California.

The individual defendants are shareholders of the corporate defendants and have at material times been agents (officers or directors) of the corporate defendants. Plaintiff alleges the individual defendants each "directly or indirectly, or through an agent or any other person, employed or exercised control over wages, hours, or working conditions of Class members." Each individual defendant "authorized, directed, sanctioned, consented, cooperated, approved, aided, instigated, assisted, participated in, and voted for tortious and unlawful acts of commission or omission which have operated to the prejudice and injury of the Class, including but not limited to causing the corporate defendants to violate the overtime regulations found in the applicable wage order and commit other statutory violations." Notwithstanding each individual defendant "knew or reasonably should have known that his conduct and/or conduct under his control was injuring the Class," each "failed to take or order appropriate action to avoid the harm."

According to plaintiff, defendants had "a policy and practice to require their Shop Managers in their Earl Scheib automobile paint shops to work long overtime hours without overtime compensation." Defendants allegedly misclassified class members as exempt employees and deprived them of statutory overtime compensation in order to maximize defendants' profits and income. As a consequence of defendants' actions, plaintiff and those similarly situated have not received statutorily guaranteed overtime compensation that is owed to them.

---

[1] Plaintiff designates this "a class action brought on behalf of all persons who are or have been employed during the class period by the Defendants." We recently confirmed that actions to recover unpaid overtime on the grounds of an employer's misclassification policy or practice may be appropriate for class treatment. (*Sav-on Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 329 [17 Cal.Rptr.3d 906, 96 P.3d 194].) The trial court has not yet ruled on class certification, having stayed the action pending appeal.

Plaintiff initially filed a complaint only against Scheib, seeking damages as well as equitable relief on behalf of himself, the general public, and similarly situated employees who worked at Scheib's automobile painting shops in California from March 13, 1996, to the present. Plaintiff subsequently added as a defendant Scheib's president, Christian Bement, who cross-complained and removed the case to federal court. After the case was remanded to state court, plaintiff named the seven remaining individual defendants, who thereafter demurred. The trial court sustained the demurrers with leave to amend.

In the operative first amended complaint, plaintiff alleged numerous causes of action, including claims denominated as "failure to pay overtime compensation in violation of Labor Code sections 1194, 510 and applicable wage orders," unlawful deduction of wages, and various tortious violations of the Labor Code.

The individual defendants demurred.[2] The trial court sustained the demurrer with leave to amend as to some causes of action and without leave to amend as to the others. Plaintiff did not amend, judgment was entered for defendants, and the entire action was dismissed with prejudice as against the individual defendants. The Court of Appeal affirmed. We granted plaintiff's petition for review.

## Discussion

Our task in reviewing a judgment sustaining a demurrer is to determine whether the complaint states facts sufficient to constitute a cause of action. (*Hill v. Miller* (1966) 64 Cal.2d 757, 759 [51 Cal.Rptr. 689, 415 P.2d 33].) We assume the truth of the properly pleaded material facts and the reasonable inferences that may be drawn therefrom. (*Coleman v. Gulf Ins. Group* (1986) 41 Cal.3d 782, 789, fn. 3 [226 Cal.Rptr. 90, 718 P.2d 77].) We give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. (*Speegle v. Board of Fire Underwriters* (1946) 29 Cal.2d 34, 42 [172 P.2d 867].) We also consider matters that may be judicially noticed. (*Serrano v. Priest* (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241].)[3]

---

[2] Scheib is not a party to this appeal.

[3] The requests for judicial notice filed by defendants (filed Feb. 13, 2004), amici curiae Miguel Martinez et al. (filed Jan. 21, 2004) and the Asian Law Caucus et al. (filed Jan. 8, 2004) are granted. The request for judicial notice filed by amicus curiae Employers Group (filed Jan. 8, 2004) is granted in part and denied in part. Specifically, the Employers Group request is granted with respect to six historical wage orders (Evid. Code, § 452, subd. (b)) and is otherwise denied (*Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063 [31 Cal.Rptr.2d 358, 875 P.2d 73]).

## A. *Overview: State Remedies for Unpaid Overtime*

■ An employee's wage rights may be provided for in an employment contract and also are closely regulated by statute. "The Labor Code[4] prescribes such matters as the time and manner of paying wages, minimum wage requirements, and mandatory overtime pay . . . ." (*Cuadra v. Millan* (1998) 17 Cal.4th 855, 858 [72 Cal.Rptr.2d 687, 952 P.2d 704]; see § 510, subd. (a).)[5] In addition, the Industrial Welfare Commission (IWC) is "empowered to formulate regulations (known as wage orders) governing employment in the State of California." (*Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 561 [59 Cal.Rptr.2d 186, 927 P.2d 296] (*Tidewater*).) The IWC has promulgated 18 orders that remain in force today, 16 relating to specific industries and occupations, one general minimum wage order that applies to all California employers and employees (excluding public employees and outside salespersons), and one order implementing the Eight-Hour-Day Restoration and Workplace Flexibility Act of 1999 (Stats. 1999, ch. 134, § 1). (See Cal. Code Regs., tit. 8, § 11000 et seq.; especially *id.*, § 11090, Order Regulating Wages, Hours, and Working Conditions in the Transportation Industry (hereafter Wage Order No. 9).) ■ The latter, Wage Order No. 9, is the IWC wage order applicable to persons employed in an automobile painting business. (See Wage Order No. 9, subd. 2(N).)

■ The Division of Labor Standards Enforcement (DLSE), headed by the Labor Commissioner, is "empowered to enforce California's labor laws, including IWC wage orders." (*Tidewater, supra,* 14 Cal.4th at pp. 561–562.) The Labor Commissioner is required to determine all matters arising under his or her jurisdiction, including questions concerning the employment status of any wage claimant. (*Post v. Palo/Haklar & Associates* (2000) 23 Cal.4th 942, 947 [98 Cal.Rptr.2d 671, 4 P.3d 928], citing § 98, subd. (a).) The Legislature also has provided California workers a private right of action to vindicate their overtime rights. (See § 1194, subd. (a).)

■ Pursuant to the foregoing scheme, if "an employer fails to pay wages in the amount, time or manner required by contract or by statute, the employee has two principal options. The employee may seek *judicial* relief by filing an ordinary civil action against the employer for breach of contract and/or for the wages prescribed by statute. (§§ 218, 1194.) Or the employee may seek *administrative* relief by filing a wage claim with the commissioner pursuant to a special statutory scheme codified in sections 98 to 98.8. The latter option was added by legislation enacted in 1976 (Stats. 1976, ch. 1190, §§ 4–11, pp. 5368–5371) and is commonly known as the 'Berman' hearing

---

[4] Unlabeled statutory references are to this code.

[5] Federal statutes also require overtime compensation. (See 29 U.S.C. § 201 et seq., the Fair Labor Standards Act of 1938 (FLSA); especially *id.*, § 207 [maximum hours].)

procedure, after the name of its sponsor." (*Cuadra v. Millan, supra,* 17 Cal.4th at p. 858, fn. omitted.) We also have recognized that, in an action brought pursuant to the unfair competition law (Bus. & Prof. Code, § 17200 et seq.), an employee may recover payment of unlawfully withheld wages as a restitutionary remedy. (*Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 177 [96 Cal.Rptr.2d 518, 999 P.2d 706].)

In addition to the foregoing avenues for the recovery of wages, the Labor Commissioner or the employee may seek certain civil penalties when the employee is not paid statutorily guaranteed wages. (§ 2699, subd. (a); see, e.g., §§ 210 [penalty for failure to pay statutorily prescribed wages], 225.5 [penalty for unlawfully withholding wages], 558 [penalty for violating chapter or IWC order].) Under the recently enacted Labor Code Private Attorneys General Act of 2004 (§ 2698 et seq., added by Stats. 2003, ch. 906, § 2), "[n]otwithstanding any other provision of law, any provision of [the Labor C]ode that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency or any of its departments, divisions, commissions, boards, agencies, or employees . . . may, as an alternative, be [enforced, and the penalty] recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees . . ." (§ 2699, subd. (a)).

### B. *Plaintiff's "Exercises Control" Liability Theory*

In a series of regulations concerning employment in a wide variety of industries and occupations, the IWC since 1947 has defined "employer" to include an individual who "exercises control over the wages, hours, or working conditions of any person." (Wage Order No. 9, subd. 2(F) (hereafter the IWC employer definition).)[6] Noting that section 510, in obligating "an employer" to pay overtime compensation, does not define that term, and that section 1194, in providing "any employee" with a private right of action to recover unpaid minimum or overtime wages, does not specify potential defendants, plaintiff argues we should apply the IWC employer definition in order to determine who are proper defendants here. That definition, plaintiff asserts, includes corporate control figures like the individual defendants.

While plaintiff does not contend any statute expressly subjects corporate control figures to liability, as employers, for unpaid wages, he argues that we can infer the IWC's authority to specify appropriate section 1194 defendants

---

[6] In its entirety, the IWC employer definition reads: " 'Employer' means any person as defined in Section 18 of the Labor Code, who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person." (Wage Order No. 9, subd. 2(F).) Section 18 provides: " 'Person' means any person, association, organization, partnership, business trust, limited liability company, or corporation."

from its powers to fix a minimum wage and to provide safeguards to ensure employees receive the minimum and overtime wages due them. (See *Cal. Drive-in Restaurant Assn. v. Clark* (1943) 22 Cal.2d 287, 302 [140 P.2d 657] [discussing IWC's "power to provide safeguards to ensure receipt of the minimum wage"].) Applying the IWC employer definition to corporate control figures, plaintiff posits, is reasonably necessary to effectuate the purposes of section 1194. (See *Agricultural Labor Relations Bd. v. Superior Court* (1976) 16 Cal.3d 392, 411 [128 Cal.Rptr. 183, 546 P.2d 687]; see generally Gov. Code, §§ 11342.1 [scope of agency authority], 11342.2 [validity of regulations].)

The individual defendants disagree that the IWC employer definition applies to this case, insisting none of them may be held personally liable for any overtime or other compensation owed to plaintiff by his corporate employer. They argue that California's labor statutes do not impose personal liability on corporate officers and directors for unpaid wages owed by a corporate employer and that common law principles protect them against incurring civil liability, as employers, for economic harm plaintiff's corporate employer may have caused him.

■ In resolving the question, we look in the first instance not to the IWC's authority nor to the asserted necessity of its employer definition, but to the IWC's intent in promulgating the employer definition. The best indicator of that intent is the language of the provision itself. (*Williams v. Superior Court* (1993) 5 Cal.4th 337, 350 [19 Cal.Rptr.2d 882, 852 P.2d 377].) As plaintiff acknowledges, the plain language of Wage Order No. 9 defining employer does not expressly impose liability under section 1194 on individual corporate agents. Nor can we infer that the Legislature, simply by amending sections 510 and 1194 several times after the IWC adopted its employer definition, impliedly intended to incorporate that definition into a unified remedial scheme comprised of those statutes and the regulations.[7]

■ A statute will be construed in light of the common law unless the Legislature " ' "clearly and unequivocally" ' " indicates otherwise. (*California*

---

[7] Since 1947, when the employer definition was added to the IWC's wage orders, the Legislature has on several occasions amended the Labor Code's chapter on wages, hours, and working conditions. (See Stats. 1961, ch. 408, § 3, p. 1479; Stats. 1982, ch. 185, § 1, p. 563; Stats. 1991, ch. 825, § 2, p. 3666; Stats. 1999, ch. 134, § 4 et seq.; Stats. 2000, ch. 492, § 3; Stats. 2001, ch. 148, § 3.) Section 510 was originally enacted as part of the act establishing our comprehensive Labor Code, in 1937. (Stats. 1937, ch. 90, p. 185.) It was amended in 1982 (Stats. 1982, ch. 185, § 1, p. 563) and in 1999 as part of the Eight-Hour-Day Restoration and Workplace Flexibility Act of 1999 (Stats. 1999, ch. 134, § 1). Section 1194, originally enacted in 1937, has been amended several times since 1947. (See Stats. 1961, ch. 408, § 3, p. 1479; Stats. 1972, ch. 1122, § 13, p. 2156; Stats. 1973, ch. 1007, § 8, pp. 2004–2005; Stats. 1991, ch. 825, § 2, p. 3666; Stats. 1992, ch. 427, § 120, p. 1653.)

*Assn. of Health Facilities v. Department of Health Services* (1997) 16 Cal.4th 284, 297 [65 Cal.Rptr.2d 872, 940 P.2d 323].) We agree with the individual defendants that, had the Legislature intended to depart from the common law by engrafting Wage Order No. 9 onto section 1194, it would have more clearly manifested that intent. Neither section 510 nor section 1194 contains any reference to the IWC employer definition: section 510 in detailing certain obligations of "an employer" leaves that term undefined; section 1194, without mentioning "employer," simply provides that "any employee" receiving less than the applicable legal minimum wage or legal overtime compensation is entitled to recover the same in a civil action. ■ "In this circumstance—a statute referring to employees without defining the term—courts have generally applied the common law test of employment." (*Metropolitan Water Dist. v. Superior Court* (2004) 32 Cal.4th 491, 500 [9 Cal.Rptr.3d 857, 84 P.3d 966] [discussing Gov. Code, § 20028, subd. (b)].)[8] "California courts have applied this interpretive rule to various statutes dealing with public and private employment." (*Metropolitan Water Dist.*, *supra*, at p. 500; see also *id.* at p. 500, fn. 5, citing cases.)

■ Under the common law, corporate agents acting within the scope of their agency are not personally liable for the corporate employer's failure to pay its employees' wages. (See, e.g., *Oppenheimer v. Robinson* (1957) 150 Cal.App.2d 420, 424 [309 P.2d 887]; see generally 1 Fletcher Cyclopedia of the Law of Private Corporations (2002 supp.) § 41.) This is true regardless of whether a corporation's failure to pay such wages, in particular circumstances, breaches only its employment contract or also breaches a tort duty of care. It is "well established that corporate agents and employees acting for and on behalf of a corporation cannot be held liable for inducing a breach of the corporation's contract." (*Shoemaker v. Myers* (1990) 52 Cal.3d 1, 24 [276 Cal.Rptr. 303, 801 P.2d 1054].) And "[d]irectors or officers of a corporation do not incur personal liability for torts of the corporation merely by reason of their official position . . ." (*United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.* (1970) 1 Cal.3d 586, 595 [83 Cal.Rptr. 418, 463 P.2d 770]).

■ For the foregoing reasons, we agree with the Court of Appeal that plaintiff cannot state a section 1194 cause of action against the individual

---

[8] *S. G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341 [256 Cal.Rptr. 543, 769 P.2d 399], relied on by plaintiff, is not apposite. In *Borello*, we recognized that "the concept of 'employment' embodied in the [Workers' Compensation] Act is not inherently limited by common law principles" and "must be construed with particular reference to the 'history and fundamental purposes' of the statute" (*id.* at p. 351) because "[t]he common law and statutory purposes of the distinction between 'employees' and 'independent contractors' are substantially different" (*id.* at p. 352). By contrast, plaintiff here has not persuaded us that one may infer from the history and purposes of section 1194 a clear legislative intent to depart, in the application of that statute, from the common law understanding of who qualifies as an employer.

defendants. Had the Legislature meant in section 1194 to expose to personal civil liability any corporate agent who "exercises control" over an employee's wages, hours, or working conditions, it would have manifested its intent more clearly than by mere silence after the IWC's promulgation of Wage Order No. 9.

The DLSE, as amicus curiae, warns that the Court of Appeal's failure to accept plaintiff's theory of corporate agent liability based on the IWC employer definition may pose an obstacle to the Labor Commissioner's ability to recover some wages owed to California employees. Apparently it is existing DLSE practice in wage claim actions prosecuted (§ 98.3) or informally heard and determined (§ 98) by the Labor Commissioner to apply the IWC employer definition, including its "exercises control" prong, so as to permit the naming of certain corporate agents as joint defendants with corporate employers. The DLSE, concerned lest its practice in this regard be called into question, urges that we recognize plaintiff's theory and direct California courts to apply it in private court actions (as the DLSE apparently does in the administrative context) in light of federal cases determining, on the basis of "economic reality," who qualifies as an employer under the FLSA (29 U.S.C. § 201 et seq.).

■■■■ We previously have determined that the DLSE's administrative policies are not due general interpretive deference unless they are promulgated in accordance with the Administrative Procedure Act, section 11340 et seq. of the Government Code. (See *Tidewater, supra,* 14 Cal.4th at pp. 568–577.) ■■■ And while it is true that "[f]ederal decisions have frequently guided our interpretation of state labor provisions the language of which parallels that of federal statutes" (*Building Material & Construction Teamsters' Union v. Farrell* (1986) 41 Cal.3d 651, 658 [224 Cal.Rptr. 688, 715 P.2d 648]), "where the language or intent of state and federal labor laws substantially differ[s], reliance on federal regulations or interpretations to construe state regulations is misplaced" (*Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785, 798 [85 Cal.Rptr.2d 844, 978 P.2d 2]). While the FLSA contains an express definition of "employer" (29 U.S.C. § 203(d)),[9] section 1194 does not.

In any event, we have no occasion in resolving this private dispute to address questions concerning the DLSE's use, in administrative proceedings, of the IWC employer definition. Nor are we persuaded that our narrow holding that plaintiff cannot employ the IWC employer definition to state a

---

[9] " 'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization." (29 U.S.C. § 203(d).)

section 1194 cause of action against the individual defendants will have the sweeping effect the DLSE fears. Defendants concede the DLSE may utilize the IWC employer definition in exercising its prosecutorial discretion to determine who are appropriate wage claim defendants. And while the DLSE in its adjudicatory role (see generally § 98 [Berman hearings]; Cal. Code Regs., tit. 8, § 13502) is of course obligated to follow the substantive law (§§ 95, 98, subd. (a)), there is no question that IWC wage orders are among the valid sources thereof (§ 517, subd. (a)).

We also disagree that our holding today poses an obstacle to the Labor Commissioner's recovering wages owed California workers. Imposition of individual civil liability under the IWC employer definition is not the only means by which an employee can seek recovery against a corporate agent. "The Berman hearing procedure is designed to provide a speedy, informal, and affordable method of resolving wage claims" (*Cuadra v. Millan, supra,* 17 Cal.4th at p. 858), and, as defendants concede, nothing in that process precludes hearing officers from finding individual corporate agents liable for unpaid wages when such liability is proven on established common law[10] or statutory[11] theories. Moreover, pursuant to section 558, subdivision (a), any "person acting on behalf of an employer who violates, or causes to be violated" a statute or wage order relating to working hours is subject to a civil penalty, payable to the affected employee, equal to the amount of any underpaid wages.[12] As noted earlier, the Legislature has provided that aggrieved employees may under certain circumstances maintain civil actions to recover such penalties. (§ 2699, subd. (a).)

C. *Liability Under Frances T. v. Village Green Owners Assn.*

In *Frances T. v. Village Green Owners Assn.* (1986) 42 Cal.3d 490 [229 Cal.Rptr. 456] (*Frances T.*), we recognized that corporate directors may

[10] See, e.g., *Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 538 [99 Cal.Rptr.2d 824] (alter ego doctrine).

[11] See, e.g., section 2673.1, subdivision (a): "To ensure that employees are paid for all hours worked, a person engaged in garment manufacturing, as defined in Section 2671, who contracts with another person for the performance of garment manufacturing operations shall guarantee payment of the applicable minimum wage and overtime compensation, as required by law, that are due from that other person to its employees that perform those operations."

[12] In its entirety, section 558, subdivision (a) provides: "Any employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows: [¶] (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages. [¶] (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages. [¶] (3) Wages recovered pursuant to this section shall be paid to the affected employee."

be "jointly liable with the corporation and may be joined as defendants if they personally directed or participated in the tortious conduct." (*Id.* at p. 504, citing numerous authorities.) "Their liability, if any," we noted, "stems from their own tortious conduct, not from their status as directors or officers of the enterprise." (*Id.* at p. 503.) "Director status therefore neither immunizes a person from individual liability nor subjects him or her to vicarious liability." (*Id.* at p. 505.)

We agree with the Court of Appeal that plaintiff cannot state a cause of action under *Frances T.* As noted, *Frances T.* applies to tortious conduct (*Frances T., supra,* 42 Cal.3d at pp. 503–504), and a simple failure to comply with statutory overtime requirements, such as plaintiff alleges here, does not qualify. (See *Hays v. Bank of America* (1945) 71 Cal.App.2d 301, 305 [162 P.2d 679] [applying FLSA, noting "federal cases have definitely determined that claims for such overtime wages . . . are not ex delicto or founded on tort . . ."].)

Plaintiff's boilerplate allegations of conspiracy do not alter the situation. " 'Agents and employees of a corporation cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage.' " (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 512, fn. 4 [28 Cal.Rptr.2d 475, 869 P.2d 454], quoting *Wise v. Southern Pacific Co.* (1963) 223 Cal.App.2d 50, 72 [35 Cal.Rptr. 652].) There can be no liability, moreover, "if the alleged conspirator, though a participant in the agreement underlying the injury, was not personally bound by the duty violated by the wrongdoing and was acting only as the agent or employee of the party who did have that duty." (*Doctors' Co. v. Superior Court* (1989) 49 Cal.3d 39, 44 [260 Cal.Rptr. 183, 775 P.2d 508]; see also *id.* at p. 45 [notwithstanding alleged conspiracy, insurer's agent not liable where "duty is imposed by statute *solely* upon persons engaged in the business of insurance"].)

Nor has plaintiff alleged that the individual defendants here misappropriated to themselves, as individuals for their individual advantage, the unpaid wages he alleges his former employer owes him. He alleges, rather, that they "caused the wages to be withheld by and in the accounts of the corporate defendants for the Defendants' collective benefit." Under such circumstances, California courts have declined to allow actions such as the instant one to proceed. (See, e.g., *Oppenheimer v. Robinson, supra,* 150 Cal.App.2d at p. 424 [employee not personally liable for nonpayment of wages to fellow employee]; *Oppenheimer v. Moebius* (1957) 151 Cal.App.2d 818, 820 [312 P.2d 314] [same, where no allegation that defendant employees "had any duty to plaintiff to pay his wages or that they were guilty of any wrong"].)

D.  *Other Theories of Liability*

The trial court, as noted, sustained defendants' demurrer with leave to amend as to some of plaintiff's purported causes of action and without leave to amend as to the others. Plaintiff decided to appeal rather than amend his complaint.

"It is the rule that when a plaintiff is given the opportunity to amend his complaint and elects not to do so, strict construction of the complaint is required and it must be presumed that the plaintiff has stated as strong a case as he can." (*Gonzales v. State of California* (1977) 68 Cal.App.3d 621, 635 [137 Cal.Rptr. 681]; see also *Chicago Title Ins. Co. v. Great Western Financial Corp.* (1968) 69 Cal.2d 305, 312 [70 Cal.Rptr. 849, 444 P.2d 481] [the plaintiff's failure to amend "constrained [us] to determine only whether appellants state a cause of action, not whether they might have been able to do so"].) "Leave to amend further is properly denied when a plaintiff fails to amend to correct defects on the basis of which special demurrers to a previous complaint were sustained . . . ." (*Chicago Title Ins. Co., supra,* at p. 327.) Plaintiff concedes the Court of Appeal below correctly concluded he cannot amend the complaint to allege more specific facts respecting his causes of action denominated in the first amended complaint as conversion, negligence per se, negligence, violation of Business and Professions Code section 17200 et seq., declaratory relief, accounting, and injunctive relief. In his petition for review, however, plaintiff asked us to decide whether the Court of Appeal erred in denying him leave to amend his causes of action for "unlawful deductions" and for allegedly tortious violations of various Labor Code sections.

We are not persuaded either court below erred. Whether to grant leave to amend a complaint is a matter within the discretion of the trial court. (*Campbell v. Regents of the University of Cal.* (2005) 35 Cal.4th 311, 320 [25 Cal.Rptr.3d 320, 106 P.2d 976].) On appeal, the burden of proving a reasonable possibility exists that a complaint's defects can be cured by amendment rests "squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) We agree with defendants that plaintiff forfeited any further leave to amend by failing to request leave in the trial court or to argue in the Court of Appeal that the trial court's denial as to specific causes of action was error.

Plaintiff's oblique comment at the hearing on the demurrer that "I suppose we could state a common law fraud claim" cannot fairly be interpreted as a request for leave to amend his complaint to include additional factual allegations. (See generally 5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 1132, p. 587.) Nor did plaintiff's assertion in his opening brief

below that the standards set forth under section 216 (respecting, inter alia, false denial of wages) "can be imputed to a fraud cause of action and the claim as stated should be interpreted as such," either raise or argue the amendment issue. As plaintiff concedes, not until he petitioned for rehearing did he present to the Court of Appeal any "additional facts that were alleged, that could have been alleged, and could have been reasonably inferred." "It is well settled that arguments, including insufficiency of the evidence, cannot be raised for the first time in a petition for rehearing." (*Gentis v. Safeguard Business Systems, Inc.* (1998) 60 Cal.App.4th 1294, 1308 [71 Cal.Rptr.2d 122].)

In light of this record, we conclude the trial court did not abuse its discretion in sustaining defendants' demurrer partially without leave to amend; nor did the Court of Appeal err in affirming that ruling.

### Disposition

For the foregoing reasons, the judgment of the Court of Appeal is affirmed.

George, C. J., Kennard, J., Baxter, J., Chin, J., and Moreno, J., concurred.

**MORENO, J.**—I concur.

In Labor Code section 1194, the Legislature has given workers a private right of action to recover unpaid overtime wages without specifying who is liable. (Lab. Code, § 1194.)[1] Liability logically should attach to the person or entity owing the unpaid overtime wages—the employer—but neither in section 1194 nor in other relevant provisions of the Labor Code (e.g., §§ 500, 510) has the Legislature defined "employer" for purposes of section 1194.

Faced with this lacuna in the Labor Code, plaintiff would look to the definition of "employer" in wage orders promulgated by the Industrial Welfare Commission, the administrative agency to which the Legislature has granted plenary power to formulate regulations governing employment in California. (*Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 561 [59 Cal.Rptr.2d 186, 927 P.2d 296].) As defined in the relevant wage order for purposes of this case, an employer is any individual "who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person." (Cal. Code Regs., tit. 8, § 11090, subd. (2)(F).) Armed with this definition, plaintiff

---

[1] All further statutory references, unless otherwise specified, are to the Labor Code.

contends liability for unpaid overtime wages extends to certain corporate officers and agents who meet the "exercises control" standard.

As a legal argument, plaintiff's position is not untenable, but it has a certain labyrinthine quality that, ultimately, cannot conceal the absence of any clear indication of legislative intent that the wage order's definition of "employer" apply to section 1194 actions. Therefore I concur with the majority. I write separately to bring this issue to the Legislature's attention.

The underlying question in this case is whether, under certain narrowly circumscribed conditions, workers should be able to sue corporate officers and agents for unpaid overtime wages where the corporate form is being misused to defraud workers of these wages. Relevant to consideration of this issue is our recent observation in *Sav-on Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 340 [17 Cal.Rptr.3d 906, 96 P.3d 194]: "Labor Code section 1194 confirms 'a clear public policy . . . that is specifically directed at the enforcement of California's minimum wage and overtime laws for the benefit of workers.' " It also bears repeating that overtime pay "relates but incidentally to wages" and that the underlying purpose of the wage laws "concern[s] not only the health and welfare of the workers themselves, but also the public health and general welfare." (*California Grape etc. League v. Industrial Welfare Com.* (1969) 268 Cal.App.2d 692, 703 [74 Cal.Rptr. 313].) In other words, the public as a whole has a stake in enforcing the overtime wage law and creating deterrents to violations of that law.

The abuse of the corporate form to avoid paying overtime wages is well documented, as is the identity of the workers who are most often the victims of this abuse. "Increasingly, employers are incorporating instead of operating as sole proprietors or partnerships. As corporations go out of business, the sole shareholders or majority shareholders are protected from personal liability for the debts of the corporation, including wage debts, even though they profit from the unpaid labor of workers." (Foo, *The Informal Economy: The Vulnerable and Exploitable Immigrant Workforce and the Need for Strengthening Worker Protection Legislation* (1994) 103 Yale L.J. 2179, 2201.) "Employers faced with large wage judgments often play the 'shell game'—that is, they close down one corporation and start up another. The corporate shield of limited liability protects shareholders, directors, and officers from personal liability for the wages of their former employees. Former employees are unable to reach the assets of the new corporation or company because of the legal fiction that the predecessor and successor are separate legal entities." (*Id.* at p. 2189.) The workers most often affected by these abuses are low-wage workers, often non-English-speaking immigrants in the garment, restaurant, electronics, and agricultural industries. (*Id.* at p. 2209.) The amicus curiae brief of the Division of Labor Standards

Enforcement describes such a case, involving three defunct garment contractors, all closely held corporations owned by members of a single family. The business failed to pay any wages to more than 250 employees over a two-month period in 2001, even as the officers and sole shareholders encouraged their employees to continue working with false promises of eventual wages. (*Lujan v. Wong et al.* (Super. Ct. S.F. City and County, 2002, No. 404939).)

The exploitation of such vulnerable workers by unscrupulous individuals hiding behind the corporate form takes place against a backdrop of diminished public resources for the enforcement of the state's labor laws. The Legislature itself has acknowledged this problem in the uncodified portions of section 2698, the Labor Code Private Attorneys General Act of 2004 (the Private Attorneys General Act), wherein the Legislature states: "Staffing levels for state labor law enforcement agencies have, in general, declined over the last decade and are likely to fail to keep up with the growth of the labor market in the future." (Stats. 2003, ch. 906, § 1, subd. (c).) This recognition was, indeed, a spur to the enactment of the Private Attorneys General Act which, in time, may provide workers with a mechanism for recovering unpaid overtime wages through private enforcement of section 558, which authorizes civil penalties for violations of the wage laws that include unpaid wages from "[a]ny employer or other person acting on behalf of an employer," a phrase conceivably broad enough to include corporate officers and agents in some cases. (§ 558, subd. (a).) The Private Attorneys General Act remains, however, untested at this point.

Section 1194, by contrast, is an established remedy directed specifically at the recovery of unpaid overtime wages. Given the Legislature's stated commitment to the enforcement of the state's labor laws, and its willingness to entrust enforcement of those laws, in some cases, to workers themselves, it would make sense for the Legislature to extend the reach of section 1194 to include individuals who are directly responsible for the nonpayment of overtime wages but who hide behind the corporate form. Permitting workers to recover unpaid overtime wages from corporate officers and agents in some limited circumstances is neither a novel nor an untested remedy. As plaintiff and various amici curiae point out, the federal equivalent of section 1194 contained in the Federal Labor Standards Act (FLSA) has long given workers this right under a definition of "employer" that includes "any person acting directly or indirectly in the interest of an employer in relation to an employee." (29 U.S.C. § 203 (d).) In construing this language, federal courts apply a standard that looks, not simply at the corporate form, but also to the underlying economic reality of whose hand is on the tiller when it comes to payment (or nonpayment) of overtime wages. (See, e.g., *Donovan v. Agnew* (1st Cir. 1983) 712 F.2d 1509, 1514 [under the "economic reality" approach,

corporate officers with significant ownership interest who exercised "operational control of significant aspects of the corporation's day to day functions" including employee compensation and "who personally made decisions to continue operations despite financial adversity" are employers within the meaning of the FLSA and "chargeable with personal liability for failure to pay minimum and overtime wages as required by the FLSA"].) Taking a leaf from federal law, the Legislature could similarly authorize section 1194 actions against such individuals. I urge the Legislature to do so.

On September 7, 2005, the opinion was modified to read as printed above.