Filed 3/15/23  Zafra v. Salient Security Services CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| CATHERINE ZAFRA et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> SALIENT SECURITY SERVICES, INC., et al., <br><br> Defendants and Respondents. | 2d Civil No. B315310 <br> (Super. Ct. No. 56-2015-00467666-CU-OE-VTA) <br> (Ventura County) |

Appellants Catherine Zafra, Stephanie Garner, and Hayley Dickinson are former employees of respondent Salient Security Services, Inc. (Salient).  Respondent Adrian Chavez (Adrian) was the chief executive officer, president, and director of Salient.  He owned 50 percent of its shares.  His brother, Aaron Chavez (Aaron), owned the other 50 percent.  Aaron was Salient's vice president, secretary, and chief financial officer.

Appellants sued Salient and Adrian (respondents) for violations of wage and hour laws and for other wrongful acts. After a court trial, judgment was rendered in favor of appellants

and against only Salient on the wage and hour violations, but against both respondents on the other wrongful acts.  In 2017 Salient filed for bankruptcy.  At the time of trial, it had no assets.

Appellants claim that the trial court erroneously ruled that Adrian is not personally liable for the wage and hour violations. They advance two theories in support of his personal liability. The first is that, pursuant to case law and wage orders of the Industrial Welfare Commission (IWC), Adrian qualified as appellants' employer.  The second theory is that Adrian was Salient's alter ego.  We affirm.

*Adrian Is Not Personally Liable for Salient's Wage and Hour Violations under Case Law and IWC Wage Orders*

The trial court's amended final statement of decision (statement of decision) and amended judgment set forth in detail Salient's wage and hour violations.  We need not repeat them here.

In the trial court appellants claimed that, pursuant to Labor Code section 558.1, Adrian is personally liable for the wage and hour violations.[1]  The statute provides in relevant part: "(a) Any employer or other person acting on behalf of an employer, who violates, or causes to be violated, any provision regulating minimum wages or hours and days of work in any order of the Industrial Welfare Commission . . . may be held liable as the employer for such violation.  [¶]  (b) For purposes of this section, the term 'other person acting on behalf of an employer' is limited to a natural person who is an owner, director, officer, or managing agent of the employer . . . ."

Section 558.1 was added to the Labor Code by Senate Bill No. 588, which became effective on January 1, 2016.  (Stats.2015,

_____

[1] All statutory references are to the Labor Code.

ch. 803, § 10.) Appellants were employed by Salient before, but not after, the effective date. The trial court ruled that section 558.1 is inapplicable because appellants' "wage and hour claims arose prior to the effective date of section 558.1 and there is nothing in the statute that indicates legislative intent to apply it retroactively."

We agree with the trial court. "[S]ection 558.1 is not retroactive. In California, '[a] statute is presumed to operate prospectively unless there is "an express declaration of retrospectivity or a clear indication" that the Legislature intended otherwise.' [Citation.] [Appellants] have not identified any express declaration or clear indication from the Legislature that it intended section 558.1 to operate retrospectively. Nor are we aware of such intent. Therefore, we conclude it is only prospective in application." (*Seviour-Iloff v. LaPaille* (2022) 80 Cal.App.5th 427, 445, review granted 10/26/2022, S275848.)[2] In their reply brief appellants concede "that <u>Labor Code</u> section 558.1 is not retroactive."

Appellants argue that the "timing" of the effective date of Senate Bill No. 588 "does not save [Adrian] from liability for appellants' wage and hour damages" because "<u>Labor Code</u> § 558.1 simply restated prior court decisions and made that liability crystal clear." Thus, "[Adrian] was legally liable for appellants'

_____

[2] In its order granting review, the California Supreme Court specified the issues to be briefed and argued. The specified issues do not include the retroactivity of section 558.1. The Supreme Court said, "Pending review, the opinion of the Court of Appeal . . . may be cited . . . for its persuasive value . . . ." (*Seviour-Iloff v. LaPaille* (Oct. 26, 2022) No. S275848, 2022 WL 15050274, at *1.)

3

wage and hour damages . . . under . . . the state of the law before [section 558.1] was enacted." This is a legal issue that we review de novo. (*Topanga & Victory Partners v. Toghia* (2002) 103 Cal.App.4th 775, 779-780.)

Appellants' argument is contrary to *Reynolds v. Bement* (2005) 36 Cal.4th 1075 (*Reynolds*). There, the California Supreme Court held that "plaintiff cannot state a section 1194 cause of action [for recovery of unpaid overtime compensation] against the individual defendants" because they, like Adrian, were officers or directors and shareholders of the corporation that had employed plaintiff and therefore were not liable under the common law. (*Id.* at pp. 1087-1088.)

But appellants claim that "[t]he trial court's decision clearly holds that [Adrian] satisfied the definition of an 'employer' [subsequently] adopted by the Supreme Court in *Martinez v. Combs* [(2010) 49 Cal.4th 35 (*Martinez*)]." There, agricultural workers sued their bankrupt employer and produce merchants to which their employer had sold strawberries picked by the workers. Plaintiffs claimed that defendants were liable for unpaid minimum wages pursuant to section 1194, which applies only to employers. The issue was "how employment should be defined in actions brought under section 1194." (*Martinez,* at p. 50.) The Supreme Court disapproved its prior decision in *Reynolds* to the extent the decision "looked to the common law rather than the applicable wage order to define employment in an action under section 1194 seeking to hold a corporation's directors and officers personally liable for its employees' unpaid overtime compensation." (*Id.* at p. 62.) The court concluded that IWC "Wage Order No. 14, and not the common law, properly

4

defines the employment relationship in this action under section 1194." (*Ibid.*)

The *Martinez* court limited its prior holding in *Reynolds*: "The opinion in *Reynolds, supra,* 36 Cal.4th 1075, properly holds that the IWC's definition of 'employer' does not impose liability on individual corporate agents acting within the scope of their agency. [Citation.] The opinion should not be read more broadly than that." (*Martinez, supra*, 49 Cal.4th at p. 66.)

Appellants have not referred us to evidence in the record showing that Adrian's acts concerning wage and hour violations were outside the scope of his agency as director, president, chief executive officer, and 50 percent shareholder of Salient. Therefore, under the *Reynolds* holding as limited by *Martinez, supra*, 49 Cal.4th at p. 66, Adrian is not personally liable for Salient's wage and hour violations. (See *Atempa v. Pedrazzani* (2018) 27 Cal.App.5th 809, 823, fn. 9 ["As a general rule, a corporate employer's officers/agents are not personally liable for the employer's failure to pay employees contractual or statutory wages, overtime compensation, vested vacation time, or unreimbursed business expenses"]; *Espinoza v. Hepta Run, Inc.* (2022) 74 Cal.App.5th 44, 58 ["Prior to the enactment of section 558.1 an employee could generally not recover damages for wage and hour violations from an individual owner or officer of the employer unless the employee could prove some other legal basis for liability such as alter ego liability. . . . [¶] In response to this problem, section 558.1 was intended by the Legislature to expand liability for wage and hour violations and 'discourage business owners from rolling up their operations and walking away from their debts to workers and starting a new company'"].)

5

*The Trial Court Did Not Err in Concluding*
*that Adrian Was Not Salient's Alter Ego*

"'"'Ordinarily, a corporation is regarded as a legal entity, separate and distinct from its stockholders, officers and directors, with separate and distinct liabilities and obligations. . . .'"'" (*Eleanor Licensing LLC v. Classic Recreations LLC* (2018) 21 Cal.App.5th 599, 615.) "The alter ego doctrine arises when a plaintiff comes into court claiming that an opposing party is using the corporate form unjustly and in derogation of the plaintiff's interests. [Citation.] In certain circumstances the court will disregard the corporate entity and will hold the individual shareholders liable for the actions of the corporation . . . ." (*Mesler v. Bragg Management Co.* (1985) 39 Cal.3d 290, 300 (*Mesler*).) "'Alter ego is an extreme remedy, sparingly used. . . .'" (*Hasso v. Hapke* (2014) 227 Cal.App.4th 107, 155.)

"There is no litmus test to determine when the corporate veil will be pierced; rather the result will depend on the circumstances of each particular case. There are, nevertheless, two general requirements: '(1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow.'" (*Mesler, supra,* 39 Cal.3d at p. 300.) A "heavy burden rests on the shoulders of the party seeking to pierce the corporate veil." (*Santa Clarita Organization for Planning & Environment v. Castaic Lake Water Agency* (2016) 1 Cal.App.5th 1084, 1105.)

In its statement of decision, the trial court listed 13 factors that courts have considered in determining whether to apply the

alter ego doctrine.[3]  It noted that "[c]ourts have found 'inadequate capitalization, commingling of assets, [and] disregard of corporate formalities' to be especially 'critical.'  [Citations.]"  The court concluded that the "above factors [do not] support application of the alter ego doctrine in this case."  "[T]here is not such a unity of interest and ownership between Salient and Adrian Chavez . . . that application of the alter ego doctrine should apply.  The fact that Salient is insolvent is not sufficient grounds to invoke the alter ego doctrine and the weight of the factors militate against its application in this case."

"Whether the evidence has established that the corporate veil should be [pierced] is primarily a question of fact which should not be disturbed when supported by substantial evidence."  (*Las Palmas Associates v. Las Palmas Center Associates* (1991) 235 Cal.App.3d 1220, 1248.)  However,

---

[3] The court listed the following factors: "(1) the commingling of assets; (2) the treatment by an individual of corporate assets as his own; (3) the failure to obtain authority to issue stock; (4) the holding out by an individual that he is personally liable for the corporation's debts; (5) the failure to maintain minutes or adequate corporate records, or the confusion of the records of separate entities; (6) an identity of equitable owners, directors, or officers of multiple entities; (7) the sole ownership of all stock by one individual or the members of a family; (8) the use of the same office or business location for multiple entities; (9) the employment of the same employees or attorneys; (10) undercapitalization; (11) the disregard of legal formalities; (12) the use of a corporation as a mere shell or conduit for a single venture or the business of an individual or other entity; and (13) the contracting with another with intent to avoid performance by use of a corporate entity to shield against personal liability."

7

appellants contend that the proper standard of review here is de novo review: "The relevant standard of review regarding a lower court's erroneous application of law and facts regarding the imposition of alter ego liability on the officers and directors of a defunct corporation would typically be the substantial evidence test but the trial court erroneously applied the law regarding alter ego liability so the proper standard of review should be de novo." Appellants argue that the court "focused on only a few of the many factors courts have over the years used to impose alter ego liability and not the ones that actually apply in this lawsuit. In doing so, the trial court ignored the law . . . ."

We presume the trial court properly considered the relevant factors listed in its statement of decision. "'"All intendments and presumptions are indulged to support [the judgment] on matters as to which the record is silent, and error must be affirmatively shown."' [Citation.]' In the absence of evidence to the contrary, we presume that the trial court considered the relevant factors." (*Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 67.) Accordingly, the de novo standard of review is inappropriate.

The trial court determined that appellants had "failed to meet their burden to support application of the alter ego doctrine." "'In the case where the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals, it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment. . . . [¶] Thus, where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.]

8

Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." [Citation.]' [Citation.] The appellate court cannot substitute its factual determinations for those of the trial court; it must view all factual matters most favorably to the prevailing party and in support of the judgment. [Citation.] "'All conflicts, therefore, must be resolved in favor of the respondent." . . .'" (*Dreyer's Grand Ice Cream, Inc. v. County of Kern* (2013) 218 Cal.App.4th 828, 838 (*Dreyer's Grand Ice Cream*).)

In arguing that Adrian was Salient's alter ego, appellants primarily rely on three factors. The first is that "[i]n 2015, [Adrian] and his brother stripped Salient of all assets and moved them to 2 new Nevada corporations. Their conduct left Salient broke and unable to pay its creditors, including appellants." The evidence as to this factor is largely based on testimony by Adrian and Aaron at an October 13, 2017 creditor's meeting in Salient's bankruptcy proceeding. One of the brothers testified that Salient had stopped doing business because "[w]e actually moved to Las Vegas, Nevada, and split the business into two different businesses." Each of the two businesses was a separate corporation.

As to the disposition of Salient's assets, the evidence is conflicting. The bankruptcy trustee asked the brothers whether any of Salient's assets was "transferred" to the two new Nevada corporations. One of the brothers answered, "No." The reporter's transcript does not identify which brother answered the question. Aaron was then questioned regarding his prior deposition testimony in August 2015. Aaron acknowledged testifying that

9

he, not he and his brother, had taken "tens of thousands of dollars[] worth of physical assets from Oxnard," where Salient was located, and had "moved them to Nevada" for use by one of the new corporations. Aaron did not testify that he had "stripped Salient of all assets."[4]

The second factor in support of appellants' alter ego argument is that Adrian and Aaron "commingled Salient funds and assets with their own" by using Salient's bank accounts as "their own personal piggybank." But the trial court apparently credited Adrian's testimony to the contrary. In its statement of decision the court noted: "According to Adrian, he and Aaron took their income by paying some of their expenses through Salient, but they reported all of it and paid taxes on the said amounts. Adrian testified that while he would use one of Salient's accounts for personal bills, their CPA who would do their taxes would show and report those sums as Adrian's income at the end of the year and such payments were his salary."

Adrian testified: "The way it would work is at the end of the year, our taxes would be done by our CPA, and he would expense it and take it over. *And . . . that would be my salary, because at the time, we didn't take salary as a pay check.* It was just, you know, as we could afford taking money out of the business."

---

[4] Aaron's deposition testimony was as follows: ""'Question. So you took tens of thousands of dollars[] worth of physical assets from Oxnard, you moved them to Nevada, and now you're using them for Salient Arms International, Incorporated. Correct? [¶] 'Answer. Correct.'" ""'Question. So you've taken assets from one pocket, and you put them into another. [¶] 'Answer. Not officially. We have not documented that yet, but that has to be documented because they are assets.'"

(Italics added.)  Adrian's counsel asked, "So all of that personal spending that [appellant] Hayley [Dickinson] testified to, that was then taken as personal income to you?"  Adrian responded: "Yes.  It was shown as income at the end of the year."

The third factor is that Adrian and Aaron "ignored corporate formalities in their operation of Salient."  But appellants do not refer us to evidence in the record supporting this factor.

The above three factors do not demonstrate that Adrian was Salient's alter ego.  By concentrating on these factors, appellants overlooked the other factors considered by the trial court.  "The first requirement for disregarding the corporate entity under the alter ego doctrine—whether there is sufficient unity of interest and ownership that the separate personalities of the individual and the corporation no longer exist—encompasses a series of factors. . . .  "'No single factor is determinative, and instead a court must examine all the circumstances to determine whether to apply the doctrine.'"  (*Misik v. D'Arco* (2011) 197 Cal.App.4th 1065, 1073.)

Appellants have failed to carry their burden of showing that the evidence, when viewed in the light most favorable to Adrian, ""'leave[s] no room [as a matter of law] for a judicial determination that it was insufficient to support a finding'"" that Adrian was not Salient's alter ego.  (*Dreyer's Grand Ice Cream, supra*, 218 Cal.App.4th at p. 838.)

*Disposition*

The judgment is affirmed.  Respondents shall recover their costs on appeal.

11

NOT TO BE PUBLISHED


YEGAN, J.


We concur:


GILBERT, P. J.


BALTODANO, J.

Kevin DeNoce, Judge

Superior Court County of Ventura

_____

Michael A. Morrow, for Plaintiffs and Appellants.

Thomas Gennaro, for Defendants and Respondents.