Filed 11/7/17; Certified for Publication 11/29/17 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| HEATHER TURMAN et al., | |
| Petitioners, | G051871 |
| v. | (Super. Ct. No. 30-2010-00425532) |
| THE SUPERIOR COURT OF ORANGE COUNTY, | O P I N I O N |
| Respondent; | |
| KOJI'S JAPAN INCORPORATED et al., | |
| Real Parties in Interest. | |

Original proceedings; petition for a writ of mandate to challenge orders of the Superior Court of Orange County, Nancy Wieben Stock and Robert J. Moss, Judges. Granted. Motion for partial dismissal of appeal. Denied.

Bryan Schwartz Law and Bryan Schwartz; Altshuler Berzon and Michael Rubin for Petitioners.

Pope, Berger, Williams & Reynolds and Timothy G. Williams for California Employment Lawyers Association as Amicus Curiae on behalf of Petitioners.

Legal Aid Society—Employment Law Center, Katherine Fiester and Carole Vigne; Los Angeles Alliance for a New Economy and Jean H. Choi; National Employment Law Project and Anthony Mischel; Wage Justice Center, Zachary Ritter and Matt Sirolly for Asian Americans Advancing Justice—Los Angeles, Asian Americans Advancing Justice—Asian Law Caucus, Centro Legal de la Raza, Legal Aid Society—Employment Law Center, Los Angeles Alliance for a New Economy, National Employment Law Project, Wage Justice Center, Women's Employment Rights Clinic of Golden Gate University School of Law as Amici Curiae on behalf of Petitioners.

No appearance for Respondent.

Law Office of Stephen A. Madoni and Stephen A. Madoni for Real Parties in Interest.

\*          \*          \*

## INTRODUCTION

Former restaurant employees sued their former employer, Koji's Japan, Inc. (Koji's), Koji's president, sole shareholder and director Arthur J. Parent, Jr. (Parent), and A.J. Parent Company, Inc., which is otherwise known as America's Printer (America's Printer), of which Parent is also the president, sole shareholder and director. The plaintiff employees alleged wage and hour claims under the Labor Code and the Fair Labor Standards Act of 1938 (29 U.S.C. § 201 et seq.) (FLSA), claims under the unfair competition law (Bus. & Prof. Code, § 17200), and a claim under the Labor Code Private Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2699 et seq.).[1]

The plaintiffs challenge four rulings: The denial of their revised motion to compel further responses to a set of document requests; the concomitant issuance of

---

[1] All further statutory references are to the Labor Code unless otherwise specified.

discovery sanctions against plaintiffs' counsel; an order only partially granting plaintiffs' motion to certify a class action; and the trial court's statement of decision determining that Parent and America's Printer were not Koji's alter egos and Parent was not liable to plaintiffs as a joint employer with regard to their state law claims.

We resolve doubts about our appellate jurisdiction by exercising our discretion to treat plaintiffs' appeal as a petition for a writ of mandate. We grant writ relief with regard to each challenged ruling and hold:

1. The trial court erred by granting the motion to certify a class as to plaintiffs' claims against only Koji's because the court applied improper criteria in determining Parent's potential liability as a joint employer on a class-wide basis.

2. The trial court prejudicially erred by denying plaintiffs' revised motion to compel further responses to a set of document requests, and also by sanctioning plaintiffs' counsel.

3. Because, as set forth in the disposition, we direct the trial court to vacate its order denying the revised motion to compel further responses to discovery on alter ego issues, we direct the court to also vacate its findings that Parent and America's Printer were not Koji's alter egos. Even if we did not direct the trial court to vacate its alter ego findings because of the court's error in denying the revised motion compel, we would nevertheless order the court to vacate those findings because the court applied incorrect legal standards for alter ego liability.

4. Although the court's statement of decision correctly cites *Martinez v. Combs* (2010) 49 Cal.4th 35 (*Martinez*) as setting forth the three alternative definitions of "employer" applied in analyzing certain violations of the Labor Code and the Industrial Welfare Commission's (IWC) wage orders, the statement of decision misapplied those definitions. In addition, the trial court failed to address whether Parent might be a joint employer under the definitions of the term "employer" applicable to plaintiffs' claims under the unfair competition law, the tip misappropriation statute, and PAGA.

3

BACKGROUND

In 2000, Koji's was incorporated by Parent and, at all times relevant to this case, Parent has been Koji's president, sole shareholder, and director. Koji's owned one sushi and shabu-shabu restaurant in Hollywood, and another such restaurant in Orange County. Each individually named plaintiff was employed by Koji's and worked at one or both of its restaurants at some point during November 2006 through February 2012. Koji's was not a profitable business and, by early 2012, had closed both restaurants.

I.

PLAINTIFFS INITIATE THIS ACTION; PLAINTIFFS FILE THE THIRD AMENDED COMPLAINT.

In November 2010, Amanda Quiles, Heather Turman, and Kimberly Dang (plaintiffs), as individuals and "on behalf of all others similarly situated, and on behalf of the general public," filed a proposed class action against, inter alia, Koji's and Parent, asserting several state and federal wage and hour claims, and violation of California's unfair competition law. (*Quiles v. Koji's Japan* (Apr. 3, 2015, G049238) [nonpub. opn.].)

In December 2012, plaintiffs filed their "third amended class and collective action complaint for damages, restitution and injunctive relief" against Koji's and Parent, and added America's Printer[2] as a defendant. The third amended complaint contained claims for (1) failure to pay overtime wages in violation of sections 510, 1194, and 1198, and IWC wage order No. 5-2001 (Cal. Code Regs., tit. 8, § 11050) (IWC wage order No. 5-2001) (first cause of action); (2) failure to pay earned wages upon discharge and waiting time penalties in violation of sections 201 through 203 (second cause of action); (3) failure to provide timely, accurate, and itemized wage statements in violation of section 226 (third cause of action); (4) failure to provide rest breaks and meal periods in

---

[2]America's Printer was incorporated by Parent in 1998 and is in the business of providing printing services. As is the case with Koji's, Parent is America's Printer's sole shareholder, president, and director.

4

violation of IWC wage order No. 5-2001, and sections 226.7 and 512 (fourth cause of action); (5) failure to compensate for all hours worked in violation of sections 221 and 223 and IWC wage order No. 5-2001 (fifth cause of action); (6) misappropriation of tips by the employer and the employer's agents in violation of section 351 and Business and Professions Code section 17200 (sixth cause of action); (7) failure to pay the minimum wage in violation of sections 1182.11, 1182.12, 1182.13, 1194, and 1997, and "the California Minimum Wage Order, MW-2001" (Cal. Code Regs., tit. 8, § 11000) (seventh cause of action); (8) violation of the FLSA (29 U.S.C. §§ 206, 207, 216) (eighth cause of action); (9) violation of the unfair competition law (Bus. & Prof. Code, § 17200) (ninth cause of action); and (10) recovery of civil penalties pursuant to PAGA (twelfth cause of action).[3]

The third amended complaint alleged Parent was a joint employer of plaintiffs and putative class members, and alleged Parent's involvement in Koji's operations as its president and sole shareholder by which Parent directly or indirectly employed or exercised control over wages, hours, and working conditions and "suffered and/or permitted" employment. The third amended complaint also alleged facts supporting its assertion Parent and America's Printer were alter egos of Koji's.

II.

THE TRIAL COURT GRANTS PLAINTIFFS' MOTION FOR CLASS CERTIFICATION ONLY AS TO KOJI'S BUT NOT AS TO PARENT OR AMERICA'S PRINTER.

In January 2013, plaintiffs filed an amended notice of motion for class certification seeking an order that the case proceed as a class action under section 382 of the Code of Civil Procedure. Plaintiffs sought certification of the following class: "All

---

[3] The third amended complaint also contained as the tenth and eleventh causes of action individual claims for retaliation for engaging in protected activity in violation of section 98.6 and in violation of the FLSA (29 U.S.C. § 215(a)(3)), and for retaliation for filing a FLSA complaint. Those two causes of action were solely applicable to plaintiff Quiles, were separately adjudicated, and are not at issue in this case. During the pendency of this appeal, Quiles was dismissed as an appellant.

persons who were employed by Defendants as servers, hosts/hostesses, floor managers, sushi chefs, assistant general managers, bussers, dishwashers, bartenders, kitchen helpers, and 'barbacks,' at any time from November 16, 2006, to the date of the final disposition of this case."  Plaintiff also sought certification of a tip misappropriation subclass:  "All persons who were employed by Defendants as servers, hosts/hostesses, floor managers, assistant general managers, bussers, dishwashers, bartenders, and 'barbacks,' at any time from November 16, 2006, through the date of the final disposition of this action."

In February 2013, the trial court certified the class as to "Koji's . . . only as employer of the class and only as to those causes of action derivative of the alleged meal and rest violations," namely the first through fifth, ninth, and twelfth causes of action.  A class was not certified as to the seventh or eighth causes of action for violation of the wage order setting the minimum wage or for violation of the FLSA.  The court also certified a tip-pooling subclass defined as "[a]ll persons who were employed by Defendant Koji's as servers, hosts/hostesses, bussers, bartenders, and 'barbacks,' at any time from November 16, 2006, through the date of the final disposition in this action."

The court explained its reasoning for partially denying the motion for class certification in a minute order dated February 22, 2013:  "The Plaintiffs have stated that their only employer was Koji's, not Mr. Parent, and based on that and the fact that no cause of action is stated against Mr. Parent for joint employer liability the Motion for Class Certification is only granted as to Koji's.  The Motion only establishes a basis for class certification concerning the issues of meal and rest breaks and tip-pooling and does not address the other claims or Causes of Action asserted by the Plaintiffs and therefore the Motion is only granted as to those issues, and the derivat[iv]e claims arising from

them.  There is insufficient evidence to establish that a tip-pooling claim can be pursued by employees other than servers, and so, a sub-class will be certified." [4]

Following the court's ruling on the motion for class certification, only the named plaintiffs' individual claims against Parent (as a joint employer or alter ego of Koji's) and against America's Printer (as an alter ego of Koji's) survived.

### III.
### THE TRIAL COURT DENIES PLAINTIFFS' REVISED MOTION TO COMPEL FURTHER RESPONSES TO DOCUMENT REQUESTS AND ALSO SANCTIONS PLAINTIFFS' COUNSEL.

The trial court stayed discovery relating to the class action claims, but permitted discovery on the discrete issue of alter ego liability.  Plaintiffs filed a motion for an order compelling further responses from Parent regarding their request for production of documents.

At the hearing on the motion to compel, the trial court and the parties' counsel discussed the court's tentative decision to deny the motion to compel on the ground its supporting separate statement was incomplete.  The court found the separate statement procedurally defective because it set forth the factual and legal reasons for granting the motion in one place instead of stating the factual and legal reasons following each request and response.  The court also noted that no meet and confer process appeared to have taken place after plaintiffs received Parent's supplemental responses and document production.

Plaintiffs' counsel described the parties' extensive meet and confer efforts leading up to the plaintiffs' receipt of what they considered inadequate and incomplete responses.  Plaintiffs' counsel also explained the short time frame between receiving

---

[4] In a minute order dated May 6, 2013, the trial court made corrections to its February 22, 2013 minute order nunc pro tunc that are not at issue in this appeal.  In the May 6 minute order, the court confirmed that accuracy of the statement of the court's reasoning for partially denying the motion for class certification set forth in the February 22 minute order.

those responses and the deadline to file the motion to compel. The trial court stated that the motion to compel would be denied "without prejudice" because if counsel provided a separate statement that reiterated the legal and factual analysis for each request, it "might produce a different result." After confirming the futility of further meet and confer efforts with counsel for the parties, the trial court stated it was "not going to require you to further meet and confer, let's put it that way, if somebody wants to bring a motion" and reiterated that the order denying the motion to compel would say "without prejudice."

Notwithstanding the trial court's assurances, it appears the court signed its tentative order without stating that no further meet and confer efforts would be required and that the motion would be denied without prejudice. Plaintiffs revised their separate statement and filed a revised motion the same day as the hearing on the original motion to compel.

Before the hearing on the revised motion to compel, the case was assigned to a new trial judge. In a January 2014 minute order, the court denied the revised motion to compel and awarded defendants $960 in sanctions against plaintiffs' counsel "for bringing this Motion which again fails to meet the requirements of the Discovery Act and this Court's prior Order." Noting that the trial court had denied the original motion to compel on the ground plaintiffs and their counsel failed to provide a complete and proper separate statement in support of that motion and failed to meet and confer with regard to the supplemental responses, the court denied the revised motion on the ground it "contains no evidence that such meet and confer process has taken place. It therefore must be denied again. In fact, Plaintiff's counsel filed this Motion the very same day the Court made its prior ruling, December 6, 2013, showing a complete disregard for this Court's prior Order."

8

## IV.

FOLLOWING A BENCH TRIAL ON THE ISSUES OF JOINT EMPLOYER AND ALTER EGO LIABILITY, THE TRIAL COURT ISSUES A STATEMENT OF DECISION CONCLUDING PARENT IS A JOINT EMPLOYER ONLY AS TO PLAINTIFFS' INDIVIDUAL CLAIMS UNDER THE FLSA AND THAT NEITHER PARENT NOR AMERICA'S PRINTER IS AN ALTER EGO OF KOJI'S.

The parties agreed to a bench trial on the issues of whether Parent and America's Printer were potentially liable as alter egos of Koji's and whether Parent was potentially liable as a joint employer with Koji's. Plaintiffs' counsel remarked, "there's really no case to pursue if there is—if it's only the corporate entity [Koji's]. I mean, it's a dead case. There's no solvent entity." Defendants' counsel agreed, stating: "If Mr. Parent is in the case, [plaintiffs' counsel] can proceed profitably for his clients, for the class members. If Mr. Parent is not in the case, it's going to go nowhere because the corporate defendant Koji's has no assets and it's not in business."

A bench trial on the issues of alter ego and joint employer status was held in January and February 2015. The trial court issued a tentative ruling and plaintiffs requested a statement of decision with 147 requests. Plaintiffs filed 154 objections to the court's proposed statement of decision. In April 2015, the trial court issued its "statement of decision regarding the trial on issues of alter ego and joint employment."

In the final statement of decision, the court noted it was not required to respond point-by-point to the issues posed by plaintiffs but must disclose the court's determination as to the ultimate facts and material issues in the case. In the statement of decision, the court ruled: (1) neither Parent nor America's Printer was liable as an alter ego of Koji's; (2) Parent was not liable as a joint employer as to the causes of action brought under state law; and (3) Parent was a joint employer for purposes of the FLSA cause of action.

9

## PARENT AND AMERICA'S PRINTER'S MOTION FOR PARTIAL DISMISSAL OF APPEAL

Parent and America's Printer filed a motion requesting that we dismiss portions of this appeal they contend are not ripe. They argue the only issue that is ripe for appeal is "the severable portion" of the trial court's decision that America's Printer is not the alter ego of Koji's, as that determination takes America's Printer out of the case. They therefore request the dismissal of plaintiffs' appeal as to whether Parent is a joint employer for purposes of state wage claims and is Koji's alter ego, as Parent is still in the case as a defendant with regard to the violation of the FLSA claim. They also request dismissal of the appeal as to the court's order partially granting the motion for class certification and the order denying plaintiffs' revised motion to compel further responses and issuing sanctions against plaintiffs' counsel.

In their opposition, plaintiffs argue that the trial court's rulings up through its determination that Parent was a joint employer and Parent and America's Printer were not Koji's alter egos trigger the so-called death knell doctrine, thereby making all the subject rulings appealable because the putative class members will not be able, as a practical matter, to pursue their claims given Koji's insolvent status. Plaintiffs argue, in the alternative, that this court may treat the appeal as a petition for a writ of mandate.

We may treat an improper appeal as a petition for a writ of mandate in unusual circumstances. (*Olson v. Cory* (1983) 35 Cal.3d 390, 400-401.) It is appropriate to treat an appeal from a nonappealable judgment as a petition for extraordinary writ when requiring the parties to wait for entry of final judgment might lead to unnecessary trial proceedings, the briefs and the record include the necessary elements for a writ of mandate, there is no indication the trial court would appear as a party in the writ proceeding, the appealability of the order was not clear, and all parties urge the court to decide the issue rather than dismiss the appeal. (*Ibid.*)

10

Here, the briefs and the record include the necessary elements for a writ of mandate and there is no indication the trial court would appear in a writ proceeding. The parties' counsel have agreed on the record that the trial court rulings have in effect resulted in preventing a class action from going forward because the remaining certified class claims are against a single entity (Koji's) which is insolvent. Requiring the parties to wait for final judgment following litigation of the remaining issues might lead to unnecessary trial proceedings. Although defendants would like us to dismiss portions of the appeal for lack of jurisdiction, on balance the circumstances justify treating plaintiffs' appeal as a petition for a writ of mandate. Therefore, we deny defendants' motion for partial dismissal of this appeal.

## DISCUSSION

### I.
### THE TRIAL COURT ERRED BY PARTIALLY GRANTING PLAINTIFFS' MOTION TO CERTIFY A CLASS.

The trial court certified a class action as to all of the claims contained in the third amended complaint except plaintiffs' claims for violation of the FLSA and violation of the minimum wage order and Quiles's individual claims for wrongful termination and retaliation. Plaintiffs do not challenge the court's class certification order with regard to the claims that were and were not certified for class action treatment. Rather, plaintiffs contend the court erred by granting their motion to certify claims against Koji's only and thus not including those claims alleged against Parent on a theory of joint employer liability.

### A.

*General Class Action Principles and Standard of Review*

"Code of Civil Procedure section 382 authorizes class actions 'when the question is one of a common or general interest, of many persons, or when the parties are

11

numerous, and it is impracticable to bring them all before the court . . . .' The party seeking certification has the burden to establish the existence of both an ascertainable class and a well-defined community of interest among class members. [Citations.] The 'community of interest' requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class. [Citation.]" (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326 (*Sav-On* ).)

The question of class certification is essentially procedural and does not involve the legal or factual merits of the action. (*Sav-On, supra,* 34 Cal.4th at p. 326.) The ultimate question in ruling on a class certification motion is whether the issues which may be adjudicated as a class, when compared with the issues which must be adjudicated individually, are sufficiently numerous or substantial to make a class action advantageous to both the litigants and the judicial process. (*Ibid.*)

Trial courts have discretion in granting or denying motions for class certification because they are well situated to evaluate the efficiencies and practicalities of permitting a class action. (*Sav-On, supra,* 34 Cal.4th at p. 326.) Despite this grant of discretion, appellate review of orders denying class certification differs from ordinary appellate review. Generally, we do not address the trial court's reasoning and consider only whether the result was correct. (*Kaldenbach v. Mutual of Omaha Life Ins. Co.* (2009) 178 Cal.App.4th 830, 843 (*Kaldenbach*).) But when denying class certification, the trial court must state its reasons, and we must review those reasons for correctness. (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435-436.) We may only consider the reasons stated by the trial court and must ignore any unexpressed reason that might support the ruling. (*Id.*; *Kaldenbach, supra,* 178 Cal.App.4th at p. 844; see also *Bufil v. Dollar Financial Group, Inc.* (2008) 162 Cal.App.4th 1193, 1205.)

We will affirm an order denying class certification if any of the trial court's stated reasons was valid and sufficient to justify the order, and is supported by substantial

evidence. (*Sav-On, supra,* 34 Cal.4th at pp. 326–327; see also *Kaldenbach, supra,* 178 Cal.App.4th at p. 844 ["We may not reverse, however, simply because *some* of the court's reasoning was faulty, so long as *any* of the stated reasons are sufficient to justify the order"].) We must reverse an order denying class certification if the trial court used improper criteria or made erroneous legal assumptions, even if substantial evidence supported the order. (*Sav-On, supra,* 34 Cal.4th at pp. 326–327; *Linder v. Thrifty Oil Co., supra,* 23 Cal.4th at pp. 435–436.) A trial court's decision that rests on an error of law is an abuse of discretion. (*In re Tobacco II Cases* (2009) 46 Cal.4th 298, 311; *Pfizer Inc. v. Superior Court* (2010) 182 Cal.App.4th 622, 629.)

B.
*The Trial Court's Stated Reason for Denying Class Certification of Claims Alleged Against Parent as a Joint Employer Was Improper.*

Here, the trial court granted plaintiffs' motion to certify a class as to state law claims against Koji's only, although the same claims were alleged in the third amended complaint against Parent and America's Printer,[5] also. In certifying the class, the court was required to have found plaintiffs established the existence of both an ascertainable class and a well-defined community of interest among class members. In reviewing the court's decision to deny class certification of these claims as against Parent on a theory of joint employer liability, based on the authorities discussed *ante*, we must consider the reasons stated by the trial court and ignore any unexpressed reason that might support the ruling.

Citing *Knapp v. AT&T Wireless Services, Inc.* (2011) 195 Cal.App.4th 932, 939, plaintiffs contend the trial court committed reversible error by failing to state in the order its reasons for denying the motion for class certification against Parent. To the contrary, in *Knapp* a panel of this court stated: "The trial court was not required to state

_____

[5] Plaintiffs do not challenge the trial court's ruling on the motion to certify a class with regard to claims alleged against America's Printer.

13

its reasons in the order denying the motion. Instead, we review the entire record to determine whether the trial court's reasons were expressed." (*Ibid.*)

In any event, here the trial court, in its February 22, 2013 minute order, did express its reason for declining to certify the class action claims against Parent: "The Plaintiffs have stated that their only employer was Koji's, not Mr. Parent, and based on that and the fact that no cause of action is stated against Mr. Parent for joint employer liability the Motion for Class Certification is only granted as to Koji's."

The third amended complaint asserts plaintiffs' claims against all defendants and specifically incorporates allegations that Parent was liable as a joint employer into each cause of action. Although it is true the individual plaintiffs' and putative class members' declarations filed in support of the motion for class certification each began with a statement that each had been employed by Koji's, that statement is not inconsistent with plaintiffs' position that Parent was also liable as a joint employer with regard to some or all of their claims. The record does not show the trial court refused to certify claims alleged against Parent because the court concluded such claims could not be proved or disproved through common facts and law. Indeed, if proven to be a joint employer, for example, Parent would have had a duty to ensure that all his employees were being paid properly and provided required rest and meal periods and, like Koji's, he would be liable to the class for wage and hour violations. (See *Benton v. Telecom Network Specialists, Inc.* (2013) 220 Cal.App.4th 701, 730-731.)

In their appellate brief, defendants argue: "In this case, the totality of the record demonstrates the lower court did not abuse its discretion. The various minute orders . . . the transcript of the February 22, 2013 [hearing] . . . , the references by the lower court to the Defendant's authority in both the objection and the demurrers, all point to the Court denying the Appellants' motion for certification on the basis that it failed to prove a community of interest as to the issue of Mr. Parent as 'joint employer.' Thus, Appellants' claim that the lower court committed reversible error because the lower court

14

did not prove a particularized analysis of its ruling is both factually and legally incorrect."

We have reviewed the portions of the record cited by defendants and do not agree that they show the trial court's reason for denying class certification of claims against Parent included a determination that plaintiffs failed to prove a community of interest as to the issue of Parent's liability as plaintiffs' joint employer. The trial court stated its reason for its ruling on the motion for class certification in its February 22, 2013 minute order quoted *ante*—and then reaffirmed that reasoning a few weeks later in its May 6, 2013 order. The court's stated reasons did not include any reference to any failure by plaintiffs to prove a community of interest. To the contrary, the court's stated reason for partially denying the motion for class certification was because the putative class members' declarations uniformly identified Koji's as their employer. The appellate record, including the transcript of the February 22, 2013 hearing, does not show the trial court's ruling was based on any other reason. In fact, the court granted class certification of claims as alleged against Koji's, thereby impliedly finding the existence of both an ascertainable class and a well-defined community of interest among class members. We may only review the trial court's expressed reasons for partially denying the motion; because that reasoning was erroneous, we must grant the petition.

We therefore grant the petition for a writ of mandate as to this issue and direct the court to vacate its order partially denying the motion for class certification as to Parent.

## II.
### THE TRIAL COURT ERRED BY DENYING PLAINTIFFS' REVISED MOTION TO COMPEL FURTHER RESPONSES ON THE GROUND PLAINTIFFS FAILED TO ENGAGE IN FURTHER MEET AND CONFER EFFORTS AND ALSO BY SANCTIONING PLAINTIFFS' COUNSEL FOR THE SAME REASON.

Plaintiffs argue the trial court "abused its discretion in denying a motion to compel for failure to meet and confer, after a different judge of the court ordered that no

15

additional meet and confer was required." (Boldface and capitalization omitted.) We agree the trial court erred by denying the revised motion to compel and by sanctioning counsel.

At a status conference in May 2013, the trial court stayed discovery relating to the class action claims, but permitted discovery on the discrete issue of alter ego liability. In October 2013, plaintiffs filed a motion for an order "compelling complete, un-redacted, and un-excerpted responses" to several requests in plaintiffs' third set of requests for production of documents. Plaintiffs also sought sanctions against defendants and their counsel. The motion was accompanied by plaintiffs' counsel's declaration summarizing, inter alia, meet and confer efforts leading up to defendants' counsel's agreement to produce supplemental responses relating to plaintiffs' alter ego claims. When those supplemental responses were received by counsel, they were found to be incomplete notwithstanding the parties' "extensive meet and confer efforts."

At the hearing on the motion to compel in December 2013, the trial court directed the parties' counsel to the court's tentative decision to deny the motion and the request for sanctions. That tentative order stated: "The Separate Statement is incomplete as it does not set forth a statement of the factual and legal reasons for compelling further responses and production as to <u>each</u> request. [¶] No meet and confer process took place after the supplemental responses and documents were provided. The process was therefore, incomplete and not ripe for this Motion. For this reason sanctions are denied to Defendant. As to Plaintiffs, sanctions are also denied due to lack of any statement in the Notice of Motion."

In response to the tentative decision, plaintiffs' counsel stated: "Your honor, as the motion described, . . . we had 16 back-and-forth communications between June and October about the discovery requests, concluding with one in which we said: Well, our understanding is you are going to send us stuff by October 10th, and that you have given us until October 31st to have filed our motion, if we still think it's incomplete.

16

And that's how we proceeded after that. [¶] And I understood the court's tentative to be saying that we should have met and conferred further after receiving their supplemental response. And as such, that the motion was unripe."

The trial court responded, "Well, that's true as to the sanctions part. But the court was unable to address the motion due to the separate statement. So with a proper separate statement, the court could have evaluated what exactly was going on. I just wasn't able to—so that sort of spilled over into the sanctions area."

Plaintiffs' counsel acknowledged that in their separate statement, they had "sort of consolidated the arguments into conceptual—here's the first type of thing we are arguing about; here is the second type of thing," instead of reiterating the factual and legal basis for the motion to compel separately after each request. The court responded, "Right. The conceptual approach just isn't going to work. Even though there's redundancies involved, we need to have it done separately because the court would be ruling on each and every individual component of the discovery request. So I will add the phrase 'without prejudice' to the ruling since, obviously, a different separate statement might produce a different result."

Plaintiffs' counsel asked, "would your honor anticipate that there would be further meeting and conferring at this point that would be required? I do want to add that since the tentative . . . we sent communication to opposing counsel indicating . . . we are willing to meet and confer further if you have an intention of producing more to respond to the concerns we have raised. And the response was that there is—'there's no curing your failure to follow procedure. You will not get a second bite at the apple. [¶] So I wanted to be clear whether or not we need to continue that process. It does not seen to be very fruitful. Or, if we can resubmit with a correct separate statement?"

The court asked defendants' counsel, "are you of the opinion that the meet-and-confer process has reached its final process, and there is nothing to be disclosed in that regard?"

17

Defendants' counsel responded: "The way the request was structured, yes, we have produced everything responsive to the requests as they were drawn up." The court and counsel engaged in the following colloquy:

"The Court: All right. I really can't comment on the quality of the meet-and-confer process. It's important—I don't think the meet-and-confer process is going to prevent the matter from being heard; it just affects the sanctions part.

"So I really can't give you any more advice than that. I'm not going to require you to further meet and confer, let's put it that way, if somebody wants to bring a motion.

"Yes, I do have an order in chambers, so I'll go ahead and sign and file that today. Plaintiff to give notice. Anything else?

"[Defendants' counsel]: No, I think we are done, your honor. Thank you.

"[Plaintiffs' counsel]: No, your honor. I guess, just to be clear, it will say it's without prejudice to refile it.

"The Court: That is correct. It will say 'without prejudice.'"

It appears the trial court signed its tentative order without adding the court's comments that no further meet and confer efforts would be required or the court's ruling that the denial of the motion was "without prejudice." The same day as that hearing, plaintiffs filed a revised motion to compel which was accompanied by a separate statement that included a statement of the factual and legal reasons for compelling further responses required by rule 3.1345(c)(3) of the California Rules of Court as to each request for which plaintiffs sought further responses. Plaintiffs also submitted a transcript of the December 6, 2013 hearing in support of the reply brief supporting their motion.

Before the hearing on the revised motion, the case was assigned to a new trial judge. In a January 31, 2014 minute order, the court denied the revised motion and awarded defendants $960 in sanctions against plaintiffs' counsel "for bringing this

18

Motion which again fails to meet the requirements of the Discovery Act and this Court's prior Order." The minute order further stated, "Court finds that on December 6, 2013 this Court denied the prior Motion to Compel based on the fact that Plaintiffs and their counsel failed to provide a complete and proper Separate Statement in support of that Motion and failed to meet and confer with regard to the Supplemental Responses received with regard to the subject discovery. [¶] This second Motion contains no evidence that such meet and confer process has taken place. It therefore must be denied again. In fact, Plaintiff's counsel filed this Motion the very same day the Court made its prior ruling, December 6, 2013, showing a complete disregard for this Court's prior Order. [¶] This is not a motion for compliance under CCP Section 2031.320, as it continues to argue regarding the responses themselves and the objections. The objections are sustained, as no valid motion has been made challenging them. And, Defendant has not failed to comply with his Responses."

Apparently, the trial court was unaware of the prior trial judge's statements to counsel at the hearing on the original motion to compel in December 2013 that no further meet and confer efforts would be required to support a revised motion to compel and solely relied on the trial court's minute order that failed to reflect those statements (although a transcript of that hearing was submitted to the court along with plaintiffs' reply brief filed in support of the revised motion to compel). Therefore, the trial court's ruling denying the revised motion and sanctioning plaintiffs' counsel on the ground plaintiffs failed to show further meet and confer efforts was in error.

In their brief on appeal, defendants do not address the trial court's stated reason for denying the revised motion to compel and for sanctioning plaintiffs' counsel. Instead, they argue "there was another reason for the denial of the discovery motion: Appellants attempted to file the motion after the statutory 45 day time limit permitted to file such motion" set forth in Code of Civil Procedure section 2031.310, subdivision (c). In other words, defendants argue that once plaintiffs' original motion to compel was

19

denied on the procedural ground that the separate statement did not place the factual and legal analyses supporting further responses after each individual response, plaintiffs were precluded from compelling further responses. Defendants reason that even if plaintiffs filed a revised motion the same day as the hearing on the original motion, as plaintiffs did here, such a revised motion was filed more than 45 days after plaintiffs received defendants' supplemental responses the previous October.

The appellate record does not show the original trial judge intended such a result, as the court denied the original motion to compel without prejudice for refiling and with the assurance that no further meet and confer efforts would be necessary. Furthermore, the trial judge who denied the revised motion did so on the ground there were no further meet and confer efforts, and not on the ground such a motion was time-barred.

We construe plaintiffs' revised motion to compel to constitute the same motion as their original motion to compel and conclude it is not time-barred under section 2031.310, subdivision (c) of the Code of Civil Procedure. Plaintiffs suffered prejudice as a result of the court's order denying the revised motion to compel not only because their counsel was sanctioned but also because the order deprived them of a ruling on the merits as to their revised motion seeking further discovery on the alter ego issue—an issue at the heart of plaintiffs' case. We direct the court to vacate its order denying the revised motion to compel and sanctioning plaintiffs' counsel.

### III.
### THE TRIAL COURT'S ALTER EGO FINDINGS MUST BE VACATED IN LIGHT OF OUR RULING ON THE REVISED MOTION TO COMPEL FURTHER RESPONSES.

Plaintiffs argue the trial court erred by concluding after the bench trial that Parent and America's Printer were not alter egos of Koji's. We do not reach the merits of plaintiffs' argument regarding alter ego liability in light of our reversal of the trial court's order denying the revised motion to compel further responses to plaintiffs' request for the

20

production of documents. That set of document requests was focused on the alter ego issue and we do not know whether additional information on that issue might be produced after the revised motion to compel is reconsidered on remand. We therefore direct the trial court on remand to vacate its alter ego findings.

Plaintiffs argue on appeal that, aside from the discovery issue, the trial court applied the wrong legal standard for resolving the alter ego issues at trial. Our review of the appellate record reveals the trial court's misunderstanding of the applicable law on alter ego.

"Ordinarily, a corporation is regarded as a legal entity, separate and distinct from its stockholders, officers and directors, with separate and distinct liabilities and obligations. [Citations.] A corporate identity may be disregarded—the 'corporate veil' pierced—where an abuse of the corporate privilege justifies holding the equitable ownership of a corporation liable for the actions of the corporation. [Citation.] Under the alter ego doctrine, then, when the corporate form is *used* to perpetrate a fraud, circumvent a statute, *or accomplish some other wrongful or inequitable purpose*, the courts will ignore the corporate entity and deem the corporation's acts to be those of the persons or organizations actually controlling the corporation, in most instances the equitable owners. [Citations.]" (*Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 538 (*Sonora*), italics added.)

Two requirements must be met to invoke the alter ego doctrine: (1) "[T]here must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist"; and (2) "there must be an *inequitable result* if the acts in question are treated as those of the corporation alone." (*Sonora, supra,* 83 Cal.App.4th at p. 538, italics added.)[6]

---

[6] Among the factors to be considered in applying the alter ego doctrine are (1) commingling of funds and other assets, (2) the holding out by one entity that it is

21

In its statement of decision, the trial court found plaintiffs failed to prove the second requirement: "[P]laintiffs must establish that failure to disregard the corporate entity would sanction a fraud or promote injustice. It is this aspect of the alter ego doctrine that plaintiff has failed to prove both as regards Mr. Parent and A.J. Parent Company, Inc." Later in its statement of decision, the court stated, "Koji's was a real business with real purpose and assets and not a sham corporate entity *formed for* the purpose of committing a fraud or other misdeeds." (Italics added.) The trial court's statements suggest a misunderstanding of the applicable law. Therefore, on remand at the retrial, we direct the court to make findings on alter ego liability according to the requirements set forth in *Sonora, supra,* 83 Cal.App.4th at page 538, as quoted *ante*.

At oral argument on appeal, plaintiffs argued that retrial was unnecessary because they proved Parent's and America's Printer's alter ego liability as a matter of law. We decline plaintiffs' invitation to conclude Parent and/or America's Printer were Koji's alter egos as a matter of law. To do so would require our assessing credibility and weighing the extensive and conflicting testimony and documentary evidence presented at trial regarding the factors set forth above, instead of reviewing this issue through the lens of the applicable standard of review. (See *Baize v. Eastridge Companies LLC* (2006) 142 Cal.App.4th 293, 302 [a trial court's alter ego findings are reviewed for substantial evidence].)

---

liable for the debts of the other, (3) identical equitable ownership in the two entities, (4) use of the same offices and employees, (5) use of one entity as a mere shell or conduit for the affairs of the other, (6) inadequate capitalization, (7) disregard of corporate formalities, (8) lack of segregation of corporate records, and (9) identical directors and officers. (*Sonora, supra,* 83 Cal.App.4th at pp. 538-539.) "No one characteristic governs, but the courts must look at all the circumstances to determine whether the doctrine should be applied." (*Id.* at p. 539.)

## IV.
### THE TRIAL COURT ERRED IN CONCLUDING PARENT WAS NOT LIABLE AS A JOINT EMPLOYER WITH RESPECT TO PLAINTIFFS' STATE LAW CLAIMS

Plaintiffs argue the trial court erred by concluding Parent was not liable as a joint employer with respect to plaintiffs' state law claims. For the reasons we will explain, we agree the trial court erred and direct the court to vacate its findings with regard to Parent's joint employer liability on plaintiffs' state law claims.

### A.
### *Definition of Employer in IWC Wage Order No. 5-2001 and* Martinez, supra, *49 Cal.4th 35.*

IWC wage order No. 5-2001, which applies to the restaurant industry and thus to plaintiffs as former employees in that industry, defines "Employer" as any person "who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person." (Cal. Code Regs., tit. 8, § 11050, subd. 2(H).) That wage order further states the term "employ" means "to engage, suffer, or permit to work." (*Id.*, § 11050, subd. 2(E).)

In *Martinez, supra,* 49 Cal.4th at page 64, the California Supreme Court held that the definition of employer contained in IWC wage orders applies to actions seeking recovery of unpaid minimum wages under section 1194. After analyzing the history of the wage orders and their language, and applying the rules of statutory interpretation, the Supreme Court articulated the following definition to determine who might have liability as an employer for unpaid minimum wages under the Labor Code: "To employ, then, under the IWC's definition, has three alternative definitions. It means: (a) to exercise control over the wages, hours or working conditions, *or* (b) to suffer or permit to work, *or* (c) to engage, thereby creating a common law employment relationship." (*Martinez, supra,* 49 Cal.4th at p. 64.)

The Supreme Court stated the alternative definitions of employer are sufficiently broad to encompass a proprietor who employs a worker by contract, permits

23

work by acquiescence, or suffers work to be performed by a failure to hinder. (*Martinez, supra,* 49 Cal.4th at p. 69.) Furthermore, "[a] proprietor who knows that persons are working in his or her business without having been formally hired, or while being paid less than the minimum wage, clearly suffers or permits that work by failing to prevent it, while having the power to do so." (*Ibid.*)

Plaintiffs' first, fourth, fifth, and seventh causes of action involve alleged violations of the IWC wage order No. 5-2001 and section 1194, to which, under *Martinez*, the three alternative definitions of "employer" discussed *ante* would apply.

B.
*The Statement of Decision Explains the Trial Court's Reasoning in Finding Parent Not Liable as a Joint Employer with Regard to Plaintiffs' State Law Claims.*

In the statement of decision, the trial court concluded Parent was not liable as a joint employer under any of plaintiffs' claims brought pursuant to state law, but was liable as a joint employer under the FLSA. The court reasoned as follows:

"Here, plaintiffs contend that since Mr. Parent was sole shareholder, a director of Koji's, and president he exercised significant control over plaintiffs. Indeed, plaintiffs argue that since Mr. Parent hired and fired non-exempt managers of Koji's, instructed his managers to 'get rid of' Quiles when she filed this action and she was thereafter fired, and ultimately laid off all employees when the restaurants closed, he exercised actual control over the employees of Koji's.

"Plaintiffs assert that the Court in *Martinez* held that under California law, in wage and hour actions, the Industrial Wage Commission's definition of employer applies. That definition provides that any person is an employer who is authorized to:

"1. suffer or permit another to work;

"2. control wages, hours and working conditions; or

"3. engage employees.

24

"Plaintiffs argue that since Mr. Parent had all of these attributes, he should be considered a joint employer with plaintiffs' direct employer, Koji's.

"The problem with plaintiffs' theory in this regard is similar to the problem with their alter ego theory. If Mr. Parent is an 'employer' by virtue of his control as sole shareholder and president of Koji's, then all owners of all closely held corporations would suffer the same fate. They all have ultimate control of the corporation, whether they delegate that control to managers o[r] not. It would mean that in every wage and hour case against a closely held corporation, the individual shareholder(s) would be liable as a joint employer. In this set of cases, limited liability would become the rule, not the exception.

"While *Martinez* did hold that IWC's definition applies to wage and hour cases brought under the Labor Code, the facts of that case were different than the facts of this case. In *Martinez*, plaintiffs were not seeking to inculpate corporate officers, board members or shareholders. Rather, plaintiffs sought to invoke the joint employer doctrine against separate companies, merchants who purchased produce from plaintiffs' direct employer. Parenthetically, the Court in *Martinez* affirmed the granting of summary judgment in defendants' favor, finding that even under the IWC's broad definition of employer, defendants were not liable.

"More appropriate authority controlling our case is found in *Reynolds v. [Bement]* (2005) 36 Cal.4th 1075, a case cited with approval in *Martinez*. In that case Plaintiffs sought to enforce labor code violations against officers, shareholders, directors and managers of a closely held corporation. On demurrer, the Court in *Reynolds* held that 'under the common law corporate agents acting within the scope of their agency are not personally liable for the corporate employer's failure to pay its employees . . . Had the legislature meant in section 1194 to expose to personal civil liability any corporate agent who "exercises control" over an employee's wages, hours, or working conditions, it

25

would have manifested its intent more clearly than by mere silence after the IWC's promulgation of Wage Order No. 9.'  [Citations.]

"For these reasons, the court finds that Mr. Parent was not an employer under California state law."

## C.
### *The Trial Court's Determination that Parent Was Not Liable as a Joint Employer with Regard to Plaintiffs' State Law Claims Was Based on a Misapplication of the Law.*

Although the trial court correctly identified the Supreme Court's decision in *Martinez* as controlling authority, it appears from the court's comments in its statement of decision that the court concluded *Martinez* is factually distinguishable from the instant case and therefore its three alternative definitions of employer are inapplicable here.  The court ultimately concluded the determination of the definition of the term employer set forth in *Reynolds v. Bement* (2005) 36 Cal.4th 1075 (*Reynolds*) is more apt; applying that definition, the court determined Parent was not liable as a joint employer on plaintiffs' state law claims.

In *Martinez*, the Supreme Court analyzed and significantly limited its holding in *Reynolds*:  "Against this background we consider the significance of *Reynolds, supra,* 36 Cal.4th 1075, and whether that decision governs this case.  In *Reynolds* we looked to the common law rather than the applicable wage order to define employment in an action under section 1194 seeking to hold a corporation's directors and officers personally liable for its employees' unpaid overtime compensation.  [Citation.]  We conclude *Reynolds* does not govern this case.  Wage Order No. 14, and not the common law, properly defines the employment relationship in this action under section 1194." (*Martinez, supra,* 49 Cal.4th at p. 62.)

In *Reynolds, supra,* 36 Cal.4th at page 1082, the plaintiff worked for a corporation that owned and operated automobile painting shops.  The plaintiff sued to recover unpaid overtime compensation under section 1194 and the IWC's applicable

26

wage order. (*Reynolds, supra,* at p. 1083.) The plaintiff sued, inter alia, eight of his employer's officers and directors in their individual capacities. (*Id.* at pp. 1082-1083.) The Supreme Court affirmed the order sustaining a demurrer to the claims against the officers and directors on the ground plaintiff failed to state a cause of action against them. (*Id.* at pp. 1083, 1087-1088.)

The Supreme Court in *Martinez, supra,* 49 Cal.4th at pages 62 to 63, acknowledged that in *Reynolds*, it had held that the common law rather than the applicable wage order defined the employment relationship for purposes of a claim under section 1194—a holding the court expressly disavowed in *Martinez.* The *Martinez* court stated: "Were we to define employment exclusively according to the common law in civil actions for unpaid wages we would render the commission's definitions effectively meaningless." (*Martinez, supra,* at p. 65.)

The *Martinez* court, however, added: "This is not to say the common law plays no role in the IWC's definition of the employment relationship. In fact, the IWC's definition of employment incorporates the common law definition *as one alternative*. As defined in the wage orders, '"[e]mployer" means any person . . . who . . . *employs* or exercises control over the wages, hours, or working conditions of any person,' and '"[e]mploy" means to *engage*, suffer, or permit to work.' [Citation.] The verbs "to suffer" and "to permit," as we have seen, are terms of art in employment law. . . . In contrast, the verb 'to engage' has no other apparent meaning in the present context than its plain, ordinary sense of 'to employ,' that is, to create a common law employment relationship. This conclusion makes sense because the IWC, even while extending its regulatory protection to workers whose employment status the common law did not recognize, could not have intended to withhold protection from the regularly hired employees who undoubtedly comprise the vast majority of the state's workforce. To employ, then, under the IWC's definition, has three alternative definitions. It means: (a) to exercise control over the wages, hours or working conditions, *or* (b) to suffer or permit

27

to work, *or* (c) to engage, thereby creating a common law employment relationship."
(*Martinez, supra,* 49 Cal.4th at p. 64, fn. omitted.)

The Supreme Court in *Martinez, supra,* 49 Cal.4th at page 66, concluded: "In sum, we hold that the applicable wage order's definitions of the employment relationship do apply in actions under section 1194. The opinion in *Reynolds, supra,* 36 Cal.4th 1075, properly holds that the IWC's definition of 'employer' does not impose liability on individual corporate agents acting within the scope of their agency. [Citation.] The opinion should not be read more broadly than that."

Here, in its statement of decision, the trial court expressed concern that if Parent were held liable by virtue of his control as sole shareholder and president of Koji's, then all owners of all closely held corporations would suffer the same fate. But Parent's status as sole shareholder and president of Koji's cannot insulate him, or any other sole owner of a closely held corporation, from liability as a joint employer if his actions meet any one of the three definitions set forth in *Martinez.* (See *Castaneda v. Ensign Group, Inc.* (2014) 229 Cal.App.4th 1015, 1017-1018 ["A corporation with no employees owns a corporation with employees. If the corporation with no employees exercises some control over the corporation with employees, it also may be the employer of the employees of the corporation it owns"]; *Guerrero v. Superior Court* (2013) 213 Cal.App.4th 912, 950 [an entity that controls the business enterprise may be an employer even if it did not "directly hire, fire or supervise" the employees].)

Parent was not a remote sole shareholder and president who was never involved in Koji's operations. In the statement of decision, in support of its finding that plaintiffs had proven the first prong of the alter ego doctrine and thereby showed Parent "dominated or controlled" Koji's, the trial court noted Parent was the "big boss" to Koji's employees and "had the ability to control [Koji's and America's Printer], whether he chose to delegate that responsibility to managers or not." The court acknowledged plaintiffs' contentions that "since Mr. Parent hired and fired non-exempt managers of

28

Koji's, instructed his managers to 'get rid of' Quiles when she filed this action and she was thereafter fired, and ultimately laid off all employees when the restaurants closed, he exercised actual control over the employees of Koji's."

The trial court did not suggest it disbelieved the evidence of Parent's involvement in Koji's beyond that of remote sole shareholder and president. Nevertheless it failed to apply the *Martinez* three-part definition of "employer" to determine whether such evidence proved joint employer liability. Instead, solely relying on *Reynolds, supra,* 36 Cal.4th 1075, the court concluded Parent was immune from such liability notwithstanding such activity, because he was simply a corporate agent acting within the scope of his agency. If that were the rule, no sole shareholder and officer of a closely-held corporation would ever be liable as a joint employer for wage violations, even if he or she suffered or permitted another to work, controlled wages, hours and working conditions, or engaged employees.

The trial court found Parent had joint employer liability as to plaintiffs' federal claims under the FLSA: "The definition of employer is broader under federal labor law than under California law. Indeed, under the FLSA it has been held that under certain circumstances a shareholder/officer of a closely held corporation can be liable for violations along with the corporate employer. [Citation.] Under the FLSA, an employer includes 'any person acting directly or indirectly in the interest of an employer in relation to an employee.'"[7]

The determination of liability for violations of the FLSA for failure to pay wages depends on whether there is an employer-employee relationship under the so-called "'economic reality test.'" (*Futrell v. Payday California, Inc.* (2010) 190

---

[7] See *Guerrero v. Superior Court, supra,* 213 Cal.App.4th at p. 945 ("*Martinez* rejected the defendants' contention that the narrower federal standard governed the definition of employer"). But see *Bonnette v. California Health & Welfare Agency* (9th Cir. 1983) 704 F.2d 1465, 1470 (referring to "the FLSA's liberal definition of 'employer'").

Cal.App.4th 1419, 1435.) The FLSA's test, though distinct from the IWC's wage orders' definition of the term '"employ"' (*Martinez, supra,* 49 Cal.4th at pp. 59-60), ordinarily involves the consideration of similar factors (*Futrell v. Payday, Inc., supra,* p. 1435). In applying the FLSA's test, courts "evaluate '"the economic realit[y] of the work relationship"' . . . '"whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."'" (*Guerrero v. Superior Court, supra,* 213 Cal.App.4th at pp. 928-929.) Our concern that the trial court misapplied state law in determining Parent's joint employer liability deepens given the similar factors applicable to determining federal joint employer liability, notwithstanding the separate definitions of the term employer under state and federal law.

We therefore direct the trial court to vacate its finding that Parent was not liable as a joint employer with regard to plaintiffs' claims involving violations of section 1194 and IWC wage order No. 5-2001, and, on retrial, reconsider this issue by applying each of the three alternative definitions set forth in *Martinez, supra,* 49 Cal.4th at pages 59 to 60, to the evidence presented in this case.

D.

*The Statement of Decision Does Not Address the Legal Standard Applicable to Determining Joint Employer Liability as to Plaintiffs' Sixth, Ninth, and Twelfth Causes of Action.*

Although raised by plaintiffs in their objections to the proposed statement of decision, plaintiffs argue and we agree the statement of decision fails to address the legal standard applicable to joint employer liability for plaintiffs' claims not involving an alleged violation of section 1194 and/or IWC wage order No. 5-2001, namely plaintiffs' sixth, ninth, and twelfth causes of action. We therefore direct the court on remand to address the applicable legal standards for joint employer liability with regard to these claims.

30

The sixth cause of action alleges defendants violated section 351, which prohibits an employer or agent from collecting, taking, or receiving a gratuity left for an employee by a patron, and based on that statutory violation, also alleges a violation of the unfair competition law. Section 350, subdivision (a) provides its own definition of the term employer: "[E]very person engaged in any business or enterprise in this state that has one or more persons in service under any appointment, contract of hire, or apprenticeship, express or implied, oral or written, irrespective of whether the person is the owner of the business or is operating on a concessionaire or other basis."

The ninth cause of action alleges a separate violation of the unfair competition law, which provides that "an owner or officer of a corporation may be individually liable under the [UCL] if he or she actively and directly participates in the unfair business practice." (*Bradstreet v. Wong* (2008) 161 Cal.App.4th 1440, 1458.)

The twelfth cause of action is brought pursuant to PAGA which plaintiff argues authorizes recovery of penalties under section 558, subdivision (a), which provides: "Any employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty . . . ."

31

DISPOSITION

The petition for a writ of mandate is granted. Let a writ of mandate issue directing the trial court to vacate its orders (1) granting plaintiffs' motion for class certification as to Koji's only, (2) denying plaintiffs' revised motion to compel further discovery responses, (3) issuing sanctions against plaintiffs' counsel in connection with the filing of plaintiffs' revised motion to compel further discovery responses, (4) concluding neither Parent nor America's Printer were alter egos of Koji's, and (5) concluding Parent cannot be held liable as a joint employer with regard to plaintiffs' state law claims. Petitioners shall recover costs on appeal.


FYBEL, J.

WE CONCUR:


ARONSON, ACTING P. J.


IKOLA, J.

32

Filed 11/29/17

**CERTIFIED FOR PARTIAL PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| HEATHER TURMAN et al., | |
| Petitioners, | G051871 |
| v. | (Super. Ct. No. 30-2010-00425532) |
| THE SUPERIOR COURT OF ORANGE COUNTY, | ORDER GRANTING PARTIAL PUBLICATION |
| Respondent; | |
| KOJI'S JAPAN INCORPORATED et al., | |
| Real Parties in Interest. | |

Petitioners Heather Turman et al., amicus curiae Legal Aid at Work (formerly the Legal Aid Society—Employment Law Center), and amicus curiae California Employment Lawyers Association have each requested that our opinion, filed on November 7, 2017, be certified for partial publication. Amici curiae Asian Americans Advancing Justice—Asian Law Caucus, Centro Legal de la Raza, Los Angeles Alliance for a New Economy, National Employment Law Project, Wage Justice Center, and the Women's Employment Rights Clinic of Golden Gate University School of Law, along

with UCLA Labor Center, have joined Legal Aid at Work's request for partial publication.

It appears that portions of our opinion meet the standards set forth in California Rules of Court, rule 8.1105(c)(2) through (8). The requests for partial publication are GRANTED pursuant to California Rules of Court, rule 8.1110.

The opinion is ordered published in the Official Reports with the exception of parts I and II of the Discussion.


FYBEL, J.

WE CONCUR:


ARONSON, ACTING P. J.


IKOLA, J.

2