Filed 6/24/26  Marriage of Feldmann CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re the Marriage of CATHERINE M. and ROGER S. FELDMANN. | |
| CATHERINE M. FELDMANN, Respondent, v. ROGER S. FELDMANN, Appellant. | G065621 (Super. Ct. No. 20D006660) O P I N I O N |

Appeal from orders of the Superior Court of Orange County, Paul Minerich, Judge. Dismissed.

Roger S. Feldmann, in pro. per., for Appellant.

Stegmeier, Gelbart, Schwartz & Benavente and Robert A. Benavente for Respondent.

Roger S. Feldmann purports to appeal from the trial court's April 7, 2025 orders modifying the amount of temporary spousal and child support he owed in arrearages and the monthly spousal support he was prospectively required to pay his former spouse, Catherine M. Feldmann.[1] For the reasons we explain, because the court's April 7, 2025 orders were made without prejudice and expressly reserved the court's jurisdiction with respect to issues directly bearing on Roger's support obligation, they did not constitute an appealable final order. We therefore dismiss this appeal for lack of jurisdiction.

FACTUAL AND PROCEDURAL BACKGROUND

In October 2020, Catherine filed a petition for the dissolution of the parties' 33-year marriage. At the time this action was initiated, only one of the parties' children was still a minor. In the petition, Catherine sought, as relevant to this appeal, an award of child support, spousal support, and attorney fees and costs.

In January 2021, the parties entered into a stipulation and proposed order whereby they agreed, "[w]ithout prejudice and subject to retroactive modification and/or reimbursement," Roger would pay Catherine monthly child support in the amount of $2,386 and monthly spousal support in the amount of $1,264. The stipulation added: "The foregoing temporary orders for child and spousal support are without prejudice to either party and subject to retroactive modification and/or reimbursement. The[c]ourt reserves jurisdiction over such retroactive modification and/or reimbursement to October 11, 2020." The trial court signed the stipulation's proposed order.

---

[1] We refer to the parties by their first names for clarity; we intend no disrespect.

2

In August 2021, the parties signed another stipulation and proposed order by which they agreed "[w]ithout prejudice and subject to retroactive modification and/or reimbursement," Roger would pay Catherine monthly child support in the decreased amount of $2,287 and monthly spousal support in the increased amount of $4,213. The stipulation further provided: "The foregoing temporary orders for child and spousal support are without prejudice to either party and subject to retroactive modification and/or reimbursement. The [c]ourt reserves jurisdiction over such retroactive modification and/or reimbursement to October 11, 2020." The trial court signed the stipulation's proposed order.

In early 2024, the parties' minor child reached the age of majority, ending Roger's obligation to pay Catherine child support in June 2024. On November 26, 2024, Catherine filed a request for order seeking, inter alia, an increase in monthly spousal support. In her accompanying declaration, Catherine sought an increase in spousal support from $4,213 per month to a guideline temporary spousal support order in an amount of no less than $6,500 per month. She further requested the trial court require Roger to pay the amount of modified spousal support retroactively from the date she filed her request for order.

Roger filed a responsive declaration opposing Catherine's request for order. In his declaration, he stated, inter alia, that as the existing order regarding support "reserves retroactivity," "[w]e should not spend limited funds re-addressing a temporary support order when we are at the eve of obtaining [t]rial dates."

Following the hearing on Catherine's request for order, in a handwritten order that was signed by the trial court and filed on April 7, 2025 (the handwritten order), the court made several orders regarding

3

Roger's support obligations "without prejudice." (Underscoring omitted.) First, the court increased Roger's monthly spousal support obligation to $5,936, commencing January 1, 2025. Second, after calculating Roger's 2024 income, the court concluded Roger owed arrears for 2024 in the amount of $7,140 for child support and $37,032 for spousal support. Third, the court concluded that "the retroactive commencement of the prospective spousal support order . . . created an arrearage" of $1,723 per month from January 1, 2025 to March 31, 2025, "for a total owed of $5,169 at [March 31, 2025]." Fourth, the court stated Roger's 2024 income, as calculated by the court, did not take into account a $300,000 bonus he received at the end of 2024 and that "this [was] not a collateral estoppel finding of 2024 income." Fifth, the court ordered "[r]etroactivity over child support and spousal support [was] reserved until August 2021 per the prior order." And finally, the court ordered it would "reserve on the issue of whether the mandatory retirement deduction on the attached Xspouse is or is not ultimately to be considered as income available for support."[2]

The trial court also issued a minute order dated April 7, 2025 (the minute order) which expressly "incorporated herein by reference" the handwritten order "with its further orders." In the minute order, the court, inter alia, reiterated it "reserve[d] on making a finding that [Roger]'s mandatory deductions for his pension [was] attributable as income for support and reserve[d] retroactivity." The court also therein stated it "intend[ed] to continue this [r]equest for [o]rder to preserve retroactivity," pursuant to *In re Marriage of Gruen* (2011) 191 Cal.App.4th 627 and *In re*

---

[2] "Xspouse is a computer program 'used to calculate guideline child support under the formula required by Family Code section 4055.'" (*In re Marriage of Alan Freeman* (2025) 110 Cal.App.5th 406, 411, fn. 4.)

*Marriage of Freitas* (2012) 209 Cal.App.4th 1059 (*Freitas*), and "order[ed] this matter continued to May 1, 2025 . . . as a remote trial setting conference and to preserve retroactivity."

Roger appealed from the handwritten order and the minute order.

## DISCUSSION

"Appellate courts have jurisdiction over a direct appeal, like the present one, only where there is an appealable order or judgment. [Citation.] 'The right to appeal is wholly statutory.' [Citations.] [¶] Under Code of Civil Procedure section 904.1, subdivision (a)(1), subject to statutory exceptions inapplicable here, an appeal may be taken only from 'a judgment' of the superior court. The judgment contemplated by this statute is "'one final judgment in an action . . . which in effect ends the suit in the court in which it was entered, and finally determines the rights of the parties in relation to the matter in controversy.'" [Citations.] The intent of this statute is to codify the "*final judgment rule*,"' part of our common law, by which "'a[ppellate] review of intermediate rulings should await the final disposition of the case'" in order to avoid "'piecemeal disposition and multiple appeals in a single action.'" [Citations.] "'[W]here anything further in the nature of judicial action on the part of the court is essential to a final determination of the right of the parties, the decree is interlocutory"' and thus 'not appealable.'" (*In re Marriage of Garcia* (2017) 13 Cal.App.5th 1334, 1342.)

A family court order requiring a party to pay temporary monthly spousal support, support arrears, and attorney fees and costs in an ongoing action "is interlocutory and, thus, not appealable under the final judgment rule." (*In re Marriage of Garcia, supra*, 13 Cal.App.5th at p. 1343.) But "[w]hen a court renders an interlocutory order collateral to the main issue,

dispositive of the rights of the parties in relation to the collateral matter, and directing payment of money or performance of an act, direct appeal may be taken. [Citations.] This constitutes a necessary exception to the one final judgment rule. Such a determination is substantially the same as a final judgment in an independent proceeding." (*In re Marriage of Skelley* (1976) 18 Cal.3d 365, 368.)

In *In re Marriage of Skelley, supra*, 18 Cal.3d at page 368, the California Supreme Court "looked to the substance of an order pendente lite rather than to chronology or to form," and concluded that "temporary support orders [were] directly appealable." However, "[a] reservation of jurisdiction usually will render a temporary support award to be nonfinal and, hence, not directly appealable." (*Last v. Superior Court* (2023) 94 Cal.App.5th 30, 44 (*Last*); citing *Freitas, supra*, 209 Cal.App.4th at pp. 1074–1075.)

Here, the trial court's orders modifying prospective spousal support, retroactively increasing spousal and child support, and ordering Roger to pay arrears with respect to both spousal and child support are contained in the handwritten order and the minute order. The court's support-related orders in the handwritten order are prefaced with the statement: "The [c]ourt makes the following orders without prejudice" (underscoring omitted), reflecting the court's intention that they are potentially subject to change and thus not necessarily the court's final orders on the subject in the action. (See e.g., *Chavez Reyes v. Hi-Grade Materials Co.* (2025) 110 Cal.App.5th 1089, 1100 ["'[b]y definition, a voluntary dismissal without prejudice is not a final judgment on the merits'"].)

The lack of finality of the handwritten order is further reflected by the trial court's statement that its calculation of Roger's 2024 average monthly income as $41,867 did not take into account a $300,000 bonus he

6

received in December 2024 and its order was "not a collateral estoppel finding of 2024 income." Again, this suggested the issue of the proper calculation of Roger's 2024 income for support purposes had yet to be definitively determined. Furthermore, the handwritten order expressly stated "[r]etroactivity over child support and spousal support [was] reserved until August 2021 per the prior order," and also that "[t]he court [would] reserve on the issue of whether the mandatory retirement deduction on the attached Xspouse [was] or [was] not ultimately to be considered as income available for support." (Capitalization omitted.)

Consistent with this intention, the minute order expressly incorporated the handwritten order, and reiterated: "The [c]ourt reserves on making a finding that [Roger]'s mandatory deductions for his pension is attributable as income for support and reserves retroactivity." That minute order also stated that "the court intend[ed] to continue [the] request for order to preserve retroactivity pursuant to [*In re Marriage of*] *Gruen*[*, supra*, 191 Cal.App.4th 627] and . . . *Freitas*[*, supra*, 209 Cal.App.4th 1059]" and that "the court order[ed] th[e] matter continued to May 1, 2025[,] at 8:30 [a.m.] in department L53 as a remote trial setting conference and *to preserve retroactivity*." (Some capitalization omitted and italics added.)

Like the court in *Last, supra*, 94 Cal.App.5th 30, the trial court in the instant case repeatedly stated it generally reserved jurisdiction regarding its ability to make retroactive modifications with respect to support. Unlike the court in *Last*, the trial court here also specifically reserved jurisdiction regarding its findings attendant to determining Roger's controlling income, such as whether to factor in his $300,000 bonus and mandatory pension deductions. Of course, the final determination of Roger's support obligations is dependent on the final determination of his income. Given the court's

7

qualifications in its orders that they are made without prejudice and the court's general and specific reservations of jurisdiction over issues directly affecting Roger's past and ongoing support obligations, we conclude the orders do not constitute a final order on the issue of support and thus are not appealable.

Noting the reservation of jurisdiction to modify spousal support retroactively generally renders a temporary support award not final and thus not directly appealable, the appellate court in *Last, supra*, 94 Cal.App.5th 30 exercised its discretion to treat the appeal taken from the support order as a petition for writ of mandate. (*Id.* at pp. 42, 44.) "We may treat an improper appeal as a petition for a writ of mandate in unusual circumstances. [Citation.] It is appropriate to treat an appeal from a nonappealable judgment as a petition for extraordinary writ when requiring the parties to wait for entry of final judgment might lead to unnecessary trial proceedings, the briefs and the record include the necessary elements for a writ of mandate, there is no indication the trial court would appear as a party in the writ proceeding, the appealability of the order was not clear, and all parties urge the court to decide the issue rather than dismiss the appeal." (*Turman v. Superior Court* (2017) 17 Cal.App.5th 969, 979.)

At the April 7, 2025 hearing, Roger's counsel repeatedly argued the court should not decide Catherine's request for order because they were on the eve of trial in this marital dissolution case. This, therefore, is not a case where the parties would have to wait a long period of time for the final resolution of all the issues in the ongoing marital dissolution action. As Catherine did not file a respondent's brief, this is not a situation where the issues are fully briefed and "all parties urge the court to decide the issue

8

rather than dismiss the appeal." (*Turman v. Superior Court, supra,*
17 Cal.App.5th at p. 979.)

As this case does not present unusual circumstances warranting our treating this appeal as a petition for writ of mandate, we do not exercise our discretion to do so and dismiss the appeal.

## DISPOSITION

The appeal is dismissed. In the interest of justice, no party shall recover costs on appeal.


MOTOIKE, P. J.

WE CONCUR:


MOORE, J.


SCHWARM, J.*

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.